# RICHARDS v. GRINNELL.

1. **Partnership:** FACTS CONSTITUTING: SHARING IN LOSSES. While it is true that the mere participation in the *profits* of a business does not constitute a partnership between the parties to the transaction, yet it is not necessary, in order to constitute a partnership, that there be an *express* agreement that each party shall bear a share of any *losses* which may occur. This may be inferred from the other provisions of the contract, the nature of the business, and the relation of the parties to the business to be transacted; and, from the admitted facts of this case, (see opinion,) it is *held* that the parties hereto were partners.

2. ————: FOR DEALING IN REAL ESTATE: BASED ON PAROL CONTRACT: STATUTE OF FRAUDS. While the decisions are conflicting, the decided weight of authority, as well as sound reason and correct principles, supports the conclusion reached in this case, that a contract of partnership for the purpose of dealing in real estate is not void under the statute of frauds, because it is not evidenced by any writing, but rests in parol; and, after the dissolution of such partnership, either partner may establish his interest in the partnership land, without such interest being evidenced by any such written contract.

3. ————: ACTION FOR ACCOUNTING AND SETTLEMENT: STATUTE OF LIMITATIONS: WHEN IT BEGINS TO RUN. The statute of limitations does not begin to run against an action for an accounting by one partner against another until the partnership has been dissolved, or until a demand for an accounting and settlement has been made.

*Appeal from Poweshiek Circuit Court.*

WEDNESDAY, MARCH 19.

THIS is an action in equity for an accounting, and the settlement of an alleged partnership, between the plaintiff and the defendant. There was a demurrer to the petition, which was sustained, and the plaintiff appeals. The facts appear in the opinion.

*McNett & Tisdale*, for appellant.

*J. B. Grinnell*, pro se.

ROTHROCK, CH. J.—I. As the cause involves the sufficiency of the averments of the petition to maintain an action, it is necessary that a copy of the petition be set out in the opinion. It is as follows:

"1st. The plaintiff represents that, on or about December 18, 1869, the defendant, accompanied by Julius A. Reed, who was a mutual acquaintance of plaintiff and defendant, came to plaintiff at Ottumwa, Iowa, and then and there represented to plaintiff that a certain railroad, namely, 'The Missouri River, Fort Scott & Gulf Railway,' was then being projected through part of the state of Kansas, and especially through the county of Cherokee in said state, and that he, the said defendant, was in a position, and was on such terms with an officer of said railway company, viz., the Hon. James F. Joy, that he would and could receive information in advance of the location by said railway company, in said county of Cherokee, and on Tar Creek therein situated, of an important station and town, and that thereby he would be enabled to purchase lands at reasonable figures, which, after the location of the town, could be laid off into town lots, and sold at a very great advance and profit on the investment.

"2nd. Plaintiff further avers that said Grinnell, at said time, further represented that he had no money to invest, but

that, if plaintiff would furnish the money, he would secure and furnish the advance information touching the location of the town site, and that Mr. Reed would go out to Kansas and make the purchase on the information to be sent him by defendant, the deeds to be taken in the name of plaintiff, and to be held in trust for both parties, who should have equal interest, and shares in the common venture, the capital invested and furnished by plaintiff, with ten per cent interest thereon, reckoned annually, to be first returned to him.

" 3d.   Plaintiff further represents that the terms, as thus substantially stated, were finally agreed upon between himself and defendant orally, and were not put in writing, because the time between the agreement and the hour when the train should leave, on which the defendant then represented it would be absolutely essential for himself and said Reed to depart, was too short in which to reduce the agreement to writing.

"4th.   That, in pursuance of said agreement, on the same evening on which it was consummated, at the instance of and by agreement with defendant, for the purposes aforesaid, plaintiff gave to said Reed his letter of credit for $10,000, and thereupon said Reed and Grinnell departed from Ottumwa together, and subsequently thereto, and by January 15, 1870, acting as plaintiff then supposed, under advice and directions from defendant, the said Reed drew and the plaintiff paid the full amount represented by said letter of credit, namely, $10,-000.   And said Reed, as plaintiff then supposed, acting under the advice and directions aforesaid, purchased the following lands in Cherokee county, Kansas, namely:

"On or about December 18, 1869, purchased the S$\frac{1}{2}$ of NW$\frac{1}{4}$ and the W$\frac{1}{2}$ of SW$\frac{1}{4}$, section 32, township 34, range 24 east, known as 'Joy City' lands, for which he paid $4,000 down, and assumed to pay the balance due said railroad company on its contract with the party from whom said Reed purchased.

"And on or about January 1, 1870, he purchased a one-

twentieth interest in what was known as the 'Finch Farm,' being the W$\frac{1}{2}$ of the NE$\frac{1}{4}$ and E$\frac{1}{2}$ of NW$\frac{1}{4}$ of section 2, township 35, range 23 east, for which he paid $120 down.

"And on or about January 8, 1870, he purchased the S E $\frac{1}{4}$ section 26, township 34, range 23 east, on which he then paid $2,500, assuming to pay the balance due the said railroad company on its contract with the party from whom Reed purchased.

"And on or about January 10, 1870, he purchased the SE$\frac{1}{4}$ section 25, township 34, range 24 east, on which he then paid down, $3,100, and assumed to pay the balance due said railroad company on its contract with the party from whom said Reed purchased.

"That said land in said sections 25, 26 and 32, were originally railroad lands, and had theretofore been sold on time contracts to the various persons from whom said Reed purchased; and, as the plaintiff believes, the said Reed did not secure deeds at the time, but only assignments of said contracts of purchase, which contracts were afterwards paid out by money furnished by plaintiff as hereinafter more particularly stated, one J. A. Clark being the agent of said railroad company to receive the deferred payments on said contracts as the same became due.

"6th. Plaintiff further avers that at said time various other persons, whose names are to plaintiff unknown, owned or purchased for themselves various other tracts of land near those purchased by said Reed for these parties litigant, and embraced within the contemplated limits of said supposed town, all of which, together with those before described in said section 32, were known as 'Joy City' lands; and that, as plaintiff has since learned, defendant had an understanding with the owners of such 'Joy City' lands, whereby, when the town should be located and laid out, a town company was to be formed, the said lands deeded to defendant in trust, he to have a one-twelfth interest for laying out the town, selling the lots, etc.; and plaintiff is informed that a trust convey-

ance to this effect was in fact made by members of said town company to defendant, on or about January, 6, 1870, but he is unable at present to furnish a copy of said trust conveyance, or its substance more fully.

"7th.　Plaintiff, on information and belief, avers, that said Reed, in some manner at said time, (though without the consent or knowledge of plaintiff,) also placed said lands in said section 32 in said Town Company, and under said trust arrangement, but just the manner of doing so plaintiff is at present unable to more fully set out.

"8th.　Plaintiff further avers that, when the deed to said lands in section 32 came to be made, instead of being taken in the name of plaintiff as originally agreed, it was taken in the name of said Reed, who held the same in trust for the parties to this suit, under the arrangement and subject to the terms of this contract, as hereinbefore specified.

"9th.　That said Reed in the purchases and payments aforesaid, together with certain expenses connected therewith, expended of said $10,000 the sum of $9,814.05, leaving a balance of $185.95, which he paid back to plaintiff January 19, 1870.

"10th.　Plaintiff further represents that the following statement represents the amounts of money and the dates of payments made by him on account of the said partnership, and on account of the purchase of and payment for said lands and expenses connected therewith, to-wit:

| | |
|---|---:|
| "Dec. 18, 1869, To J. A. Reed on letter of credit. | $5,000.00 |
| Jan. 7, 1870, To J. A. Reed on letter of credit... | 2,000.00 |
| Jan. 10, 1870, To J. A. Reed on letter of credit.. | 3,000.00 |
| Jan. 15, 1870, To exchange on drafts of Reed.... | 20.00 |
| Oct. 25, To J. A. Clark, R. R. land agent, on contract..................................... | 56.00 |
| Nov. 24, To J. A. Clark, R. R. land agent, on contract..................................... | 112.00 |
| Dec. 19, To pay taxes on lands................. | 62.56 |

Nov. 15, 1871, To J. A. Clark, R. R. agent, on
    contract........... ....................$    324.54
Nov. 27, 1871, To J. A. Clark, R. R. agent, on
    contract...............................    324.00
Oct. 19, 1871, To J. W. Richards expenses to see
    land.................... .........    47.20
Dec. 31, 1871, To taxes on lands..............    24.98
Oct. 30, 1872, To Clark, R. R. agent, on lands...    204.80
Nov. 19, 1872, To Clark, R. R. agent, on lands..    409.60
Dec. 31, 1872, To taxes on lands..............    28.82
Nov. 15, 1873, To Clark, R. R. agent, on lands..    580.80
Jan. 3, 1874, To taxes on lands..............    96.80
Dec. 10, 1874, To taxes on lands..............    66.51
Nov. 2, 1874, To Clark, R. R. agent, on lands...    547.20
June 28, 1875, To Clark, R. R. agent, on lands..    485.20
Dec. 13, 1875, To taxes on lands..............    69.45
Aug. 14, 1875, To recording land deeds ........    2.40

    " 11th. That the only credits as against said items is the
said credit of $185.95, of January 19, 1870, aforesaid, down to
the transfer of lands to Iowa College, as hereinafter stated..

    " 12th. Plaintiff further avers that, after the purchase of
said lands and interests, the said line of railroad failed to be
located through or near enough to them to justify or induce
the building of a town, and no town, as plaintiff is informed,
ever was located upon or near there, and, as a result, said lands
and interests very greatly depreciated in value, and could
not be disposed of except at a very great sacrifice. That in
consequence of such depreciation said lands were thus held
until, on May 5, 1876, the plaintiff, by consent of the defend-
ant, conveyed the said lands in sections 25 and 26 to the trus-
tees of Iowa College, at Grinnell, Iowa, for the agreed con-
sideration, as between plaintiff and defendant, of $3,200, the
full value thereof, (the said lands in section 32 being also
named in said deed), and on September 15, 1876, the said
Reed, under direction of plaintiff, and by consent of de-
fendant, conveyed to the trustees of said college the said

lands in sections 32, at the agreed price, as between plaintiff and defendant, of $1,600, which is and .was the full value thereof.

" 13th. That the only interest in said land transactions and purchases which remains undisposed of is the said interest in the 'Finch Farm' aforesaid, the value of which plaintiff is unable to state.

" 14th. Plaintiff further avers that, by virtue of the said agreement between himself and defendant and the subsequent transactions growing thereout, they became partners in said land transaction, and, as such, equally liable for profits and losses growing out of the same, estimated upon the basis and according to the terms of said agreement, and plaintiff, prior to the commencement of this suit, applied to defendant for a settlement of said partnership business, to the end that the partnership might be wound up and dissolved, and the remaining assets disposed of, but they failed to be able to effect a settlement; wherefore he now applies to this court of chancery, having no adequate remedy at law.

" 15th. Wherefore plaintiff prays for an accounting between himself and defendant, and a settlement and winding up of all said partnership matters, and for a dissolution of the partnership.

" He further prays judgment against defendant on the accounting for $10,000, or whatever balance may be found due plaintiff, and for such other, further and general relief as is equitable and just, and for costs of suit, and he will ever pray, etc., etc."

The demurrer was upon the following grounds:

" 1st. That the petition shows upon its face that more than five years have elapsed since the date of the last item and the commencement of this suit, and that the same is fully barred by the statute of limitations.

" 2nd. That the facts stated in plaintiff's petition do not entitle him to the relief demanded, or to any relief whatever,

and fail to show that plaintiff has any cause of action against this defendant whatever."

It is claimed by defendant that the agreement set up in the petition did not constitute a partnership, because by the contract the defendant was not bound to bear a proportion of the losses, if losses there should be. It is well settled that the mere participation in the profits of a venture or business does not constitute a partnership between the parties to the transaction. *Ruddick v. Otis & Snow*, 33 Iowa, 402, and authorities there cited.

1. PARTNERSHIP : facts constituting : sharing in profits.

But it is not necessary, in order to constitute a partnership, that there be an express agreement that each party shall bear a share of any losses which may occur in the business. This may be inferred from the other provisions of the contract, and the nature of the business, and the relation of parties to the business to be transacted. In this case, while it is true that there is no averment that it was expressly agreed that the defendant should bear his share of any losses there might be, yet it is averred that the deeds to the land to be purchased "were to be taken in the name of the plaintiff, and to be held in trust for both parties, who should have equal interests and share in the common venture, the capital invested and furnished by plaintiff, with ten per cent interest thereon, reckoned annually, to be first returned to him."

This is a distinct averment that the defendant should have an equal interest in the land with the plaintiff. The land was to be held in trust for both parties.

It must be remembered that we are determining this case upon a demurrer to the petition, and that the allegations of the petition must be regarded as true. Taking the whole pleading together, we incline to think that a participation in losses is fairly to be inferred.

In Parsons on Partnership, 60, it is said that, "whether two or more persons are partners to each other must generally, and perhaps always, be determined by the intention of the parties, as the same is expressed in their contract, or may be

gathered from their acts, and from all the circumstances which are available for the interpretation or construction of the contract."

In the same work, on p. 57, it is said: "When parties agree to enter into an association for the purpose of buying or selling, and carrying on a joint business indefinitely, no stipulation for dividing profit and loss is necessary, as that is an incident to the prosecution of their joint business."

In *Miller v. Hughes*, 1 A. K. Marshall, 181, the contract between the parties was silent as to losses. The court used this language: "The principal ground urged in the argument in this case against considering Brickley and Miller as partners was, that there was no agreement that Brickley should be liable to sustain a proportion of the loss. But, as he was entitled to a share of the profits, it follows as a legal consequence that he must share the loss. The rule in this respect is that he who shares in the advantages must also share in the disadvantages of the partnership concern."

The defendant cites the case of *Ruddick v. Otis & Snow*, 33 Iowa, 402, as sustaining the claim that the facts in this case do not show a partnership. In that case, Gafford & Co., the assignors of the plaintiff, paid to Otis & Snow the sum of $2,000, and took from them the following writing:

"Received of Gafford & Co. $2,000 to invest in wool, said Gafford & Co. to receive two-thirds of the net proceeds or profit in the sale of the wool, and Otis & Snow one-third.

"OTIS & SNOW."

There was a loss in the transaction, and the assignee of Gafford & Co. sought by the action to recover one-third of the loss. Otis & Snow denied that there was any agreement for a partnership, and claimed that they acted merely as agents for Gafford & Co., and were to receive one-third of the net profits for their services.

There was a conflict in the evidence as to the nature of the employment of Otis & Snow, and the court found that the

preponderance was that they were to buy the wool and receive for their services one-third of the net profits.

The important distinction between that case and this is, that here it is distinctly averred in the petition that the defendant should have a joint interest in the land. If, in the case cited, it had been distinctly agreed that the wool to be purchased should be the joint property of the parties, the cases would be very much alike.

We think the demurrer should not have been sustained upon this ground, because of the averment that the defendant was to have an equal interest and share in the business. If he was to give advanced information merely, and have no interest in the venture, further than to receive for his services to the plaintiff one-half of the net profits, then there was no partnership, and, consequently, no right of action against the defendant.

II. It is further contended that the agreement, if a contract of partnership, being for a partnership for the purpose 2. ——: for of dealing in real estate, is void under the statute
dealing in
real estate: of frauds, because it is not evidenced by any writ-
based on pa-
rol contract: ing, but rests in parol. This question has been
statue of
frauds. much discussed by the courts, and it is not to be denied that there are adjudged cases which hold that such a contract is within the statute of frauds. See *Smith v. Burnham*, 3 Sumner, 435.

On the other hand, there are many cases which hold that a parol contract of partnership is not within the statute. *Dale v. Hamilton*, 5 Hare, 369; *Essex v. Essex*, 20 Beavan, 449; *Bunnel v. Tanitor's Adm'r*, 4 Conn., 568; *Chester v. Dickerson*, 54 N. Y., 1; *Holmes v. McCray*, 51 Ind., 358.

In *Dale v. Hamilton*, it is said that "a partnership agreement between A. & B., that they shall be jointly interested in a speculation for buying, improving for sale, and selling lands may be proved, without being evidenced by any writing signed by, or by the authority of, the party to be charged therewith, within the statute of frauds; and, such an agree-

ment being proved, A. or B. may establish his interest in land, the subject of the partnership, without such interest being evidenced by any such writing."

In *Chester v. Dickinson*, it is said: "Most of the conflict in the authorities has arisen about the title to the real estate after the dissolution of the partnership, or the death of one of the partners. But suppose two persons, by a parol agreement, enter into a partnership to speculate in land, how do they come in conflict with the statute of frauds? No estate or interest in land has been granted, assigned or declared. When the agreement is made, no lands are owned by the firm, and neither party attempts to convey or assign any to the other. The contract is a valid one, and, in pursuance of this agreement, they go on and buy, improve and sell lands. While they are doing this, do they not act as partners, and bear a partnership relation to each other? Within the meaning of the statute, in such case, neither conveys or assigns any land to the other, and hence there is no conflict with the statute."

We think the cases above cited are in accord with the decided weight of authority, and, in our opinion, they are founded upon sound reason and correct principles. It is everywhere held that, where land is held by a partnership, it is, as between the parties, and as to the creditors of the firm, to be treated as personal property. Such being the law, it would seem to follow that the statute of frauds can have no application to land thus held and owned.

III. It is claimed that the action is barred by the statute of limitations. Having held that the contract as set up in the petition constituted a partnership, this position of the appellee cannot be sustained. The action is for a dissolution of the partnership, and to settle and wind up its affairs. It is alleged that there is land belonging to the partnership still undisposed of, and the statute cannot commence to run until

3. ———: action for accounting and settlement: statute of limitations: when it begins to run.

the partnership is dissolved, or until a sufficient time has elapsed after a demand for an accounting and settlement.

If the action were upon a mere account, or if, under the averments of the petition, the transaction did not constitute a partnership, but a mere contract by which plaintiff claimed of the defendant for losses occasioned by the acts of the defendant, the action would clearly be barred. But, having held that the agreement, as shown by the petition, constituted a partnership, the action is not barred.

REVERSED.