Augustus C. Brown, as Ancillary Administrator, etc., Appel· lant, v. The Farmers' Loan and Trust Company, Respondent.

The will of M. gave to A., her husband, the use of income and profits of all her estate during his life, with power, at his pleasure, to sell any of the personal estate, to receive the proceeds and appropriate the same to his own use. M. owned, at the time of her death, certain bonds which A. thereafter pledged to defendant to secure a loan. When the loan became due A.; not being able to pay, stated that fact to defendant, and proposed that it take the bonds for the loan, which proposition defendant accepted. No note or other written obligation had been given for the loan. In an action to recover for the estate the proceeds of the bonds, *held*, that conceding A. had no right under the will to pledge them, and, so, that such pledge was void, he had the right to sell, and could sell, to his creditor and apply the proceeds to extinguish his debt; and that the trans-action was, in effect, such a sale.

It appeared that the books of defendant showed no cancellation of the loan, but the account ran on as before. It was proved, however, that it was defendant's custom, in keeping its books, to show by the accounts the ultimate result of each loan, and, so, that its treatment of the matter as a loan was continued until the final result was reached. *Held*, that such continuation of the accounts was not inconsistent with the theory of a sale.

The bonds, at the time of the alleged sale, were not negotiable, except at a great sacrifice. Defendant, however, succeeded in collecting the full amount; this gave to it a surplus over the principal and interest of its investment. A., having died, defendant remitted this surplus to the admin-istrator of his estate. *Held*, that this performance of an honorable duty . did not authorize an inference that defendant did not consider the transaction as a sale; also, *held*, that the sale, although the contract was not in writing, was not invalidated by the statute of frauds; that said statute applies to executory, not to executed, contracts.

Reported below, 51 Hun, 386.

(Argued October 16, 1889; decided November 26, 1889.)

Appeal from order of the General Term of the Supreme Court in the first judicial department, made January 28, 1889, which reversed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to recover the proceeds of fifteen bonds of $1,000 each, with interest, which were made by Simeon P. Buckner of the city of Chicago, and secured by mortgage upon real estate situated there.

The bonds in controversy were the property of Mary R. Burnside at the time of her death, which occurred on the 9th of March, 1876; she left a will by which she devised and bequeathed to her husband, Ambrose E. Burnside, for and during the term of his natural life, the free use and enjoyment of the rents, profits and income of all her estate, real, personal and mixed. The will further provided that he should, during his natural life, have "full power and authority at his pleasure to change the investment of any of the personal property and estate ; also with power and authority at his pleasure to sell, transfer and convey any portion of my personal property and estate, execute the requisite conveyance and conveyances thereof, receive the proceeds of any such sale or sales and apply and appropriate the net proceeds thereof to and for his own use, benefit and behoof forever."

After his decease the will provided for the payment of certain legacies, and then gave and devised all the rest, residue and remainder of her estate, real, personal and mixed, then remaining, in equal shares to certain charities existing in the city of Providence, in the state of Rhode Island.

The will was proven and executed in that state, and letters testamentary issued to the surviving husband of the testatrix. At that time the bonds now in suit were registered in her name in the office of the defendant, and the mortgage given to secure them was executed and delivered to the defendant in trust for that object. The bonds, upon their face, were made payable to bearer, and under the authority of the executor, Ambrose E. Burnside, their registration was canceled, and

they were restored in that manner to their former condition of bonds payable to bearer. After that, and in January, 1879, General Burnside applied to the defendant for a loan to him of the sum of $15,000 on the security of the fifteen bonds now in controversy. The loan was made and the bonds were delivered to the defendant, in whose possession they remained until they were paid out of the proceeds of the mortgaged property.

This disposition of the bonds was assailed by the plaintiff as ancillary administrator of the estate, appointed by the surrogate of the county of New York, on the ground that General Burnside had no power to pledge the bonds for a loan.

Further facts are stated in the opinion.

*Stephen A. Walker* for appellant. The bonds in question were not negotiable instruments. The defendant acquired by the pledge the interest of the pledgor, and no more. (*Brown* v. *Jordahl*, 18 Rep. 278; *Rawson* v. *Davidson*, 15 id. 338; *In re Leland*, 6 Benedict, 175; *Fairbanks* v. *Sargent*, 39 Hun, 588; 104 N. Y. 108; *Crouch* v. *Foncier*, L. R.; 82 B. C. 386.) A party dealing in negotiable securities has notice by the form in which they are drawn, to trustee or executor, or otherwise, that his title to such securities is as indicated upon the face of the instrument. (*Duncan* v. *Jaudon*, 15 Wall. 165; *Nat. Bk.* v. *Ins. Co.*, 104 U. S. 54; *Fellows* v. *Longyor*, 91 N. Y. 324; *Rudd* v. *Monroe*, 18 Hun, 316; *Willliamson* v. *Brown*, 15 N. Y. 354, 362; *Bennett* v. *Buchan*, 76 id. 390; *Swan* v. *P. Bk.*, 24 Hun, 280; *White* v. *Price*, 39 id. 397.) There was no valid sale of the bonds by General Burnside to the defendant. (*Schindler* v. *Houston*, 1 N. Y. 263; *Lilywhite* v. *Devereaux*, 15 M. & W. 285; *Edan* v. *Duffield*, 1 Q. B. 302.) There is no ambiguity whatever in the language of the will as respects the extent of the interest granted to General Burnside thereunder. In apt words there is a gift of a life estate simply. (*Hoyt* v. *Jacques*, 129 Mass. 286; *Downey* v. *Bissell*, 4 Fed. Rep. 55; *Bloomer*

v. *Waldron*, 3 Hilt. 361; *Stokes* v. *Payne*, 58 Miss. 614; 1 Burge's Com. 629; 14 id. 581; 4 Kent's Com. 536; *Jackson* v. *Robins*, 16 Johns. 537–588; *Herring* v. *Barrow*, L. R., 13 Ch. Div. 144; *McAuley's Appeal*, 93 Penn. 102; *Stuart* v. *Walker*, 72 Me. 145.) The power granted General Burnside "at his pleasure to sell, transfer and convey any portion of my personal property and estate," and to "receive the proceeds of any such sale or sales and apply or appropriate the net proceeds thereof to and for his own use, benefit and behoof forever," does not include a power to mortgage or pledge. (*In re Crawford*, 113 N. Y. 372; *Chamberlain* v. *Chamberlain*, 43 id. 433; *Harrison* v. *Nixon*, 9 Peters, 483–504; *Despard* v. *Churchill*, 53 id. 198; *Kerr* v. *Dougherty*, 79 id. 327, 343, 358; *Hollis* v. *D. T. Sem.*, 95 id. 167; *Chamberlain* v. *Taylor*, 105 id. 185; *Halton* v. *Burkard*, 92 id. 295; *Gilman* v. *McArdle*, 99 id. 452.)

*David McClure* for respondent. The property, upon the probate of the will of Mary R. Burnside, became the individual property of Ambrose E. Burnside. He had power to pledge or dispose of it, and creditors and purchasers are protected. (4 Kent's Com. 345; *Hutton* v. *Benkard*, 92 N. Y. 295.) The bonds were properly pledged to the defendant, and subsequently the equity and the bonds themselves were transferred to it. (*Allan* v. *Cowan*, 23 N. Y. 502.) The bonds in question were negotiable. (*Mercer Co.* v. *Hackett*, 1 Wall. 83; *Thompson* v. *Lee County*, 3 id. 327; *White* v. *V., etc., R. R. Co.*, 21 How. 575; *Murray* v. *Lardner*, 2 Wall. 110, 118; *Gelpcke* v. *City of Dubuque*, 1 id. 206; *Brainerd* v. *N. Y. & H. R. R. Co.*, 25 N. Y. 496; *In re Leland*, 6 Bend. 175; Daniel on Negotiable Inst. § 1847; *Fairbanks* v. *Sargent*, 39 Hun, 588.) These bonds were properly transferred as payable to bearer. (*R. I. H. T. Co.* v. *C. Nat. Bk.*, 14 R. I. 625.) The defendant is not chargeable with notice as to Burnside's powers as executor, and not responsible to the estate for his acts. (Jones on Pledges, §§ 481–483; *Leitch* v. *Wells*, 48 N. Y. 585.)

FINCH, J. The argument in behalf of the appellant is extremely difficult to answer if we suffer ourselves to be tied down by the form of the transaction and shut our eyes to its substance. But if we have courage to cut through the technical outside shell, we shall find within nothing which the law condemns or which drives us to the commission of a regretted injustice.

Let almost everything urged on behalf of the appellant be admitted for the sake of the argument, though without so deciding. Let us concede that the will of Mrs. Burnside gave to her husband only a life estate with a power of sale and liberty to appropriate the proceeds to his own use; that the construction of the will is to be governed by the law of Rhode Island, and so is not affected by our statute relating to powers; that, therefore, General Burnside had no right under the will to pledge the bonds; that those in question were the individual bonds of General Buckner, and not negotiable paper within the meaning of the law-merchant; that the defendant knew them to have formed part of Mrs. Burnside's estate and was fully cognizant of the terms of the will; admit all this, and yet I think the plaintiff must fail, as in the interest of justice he ought to fail.

For consider what actually happened. General Burnside borrowed $15,000 of the defendant corporation. It supposed its loan was secured by the pledge of the Buckner bonds. But that pledge was not made, because it could not be made, and the inevitable legal result was that it had loaned its money without security, and solely upon the personal responsibility of the borrower. The bonds were in the possession of the trust company, and had been registered as payable to bearer, but remained the property of the life tenant and subject to the provisions of the will. The loan became due; the debtor could not pay; and some way out of the emergency was necessarily to be adopted. General Burnside, under the will, was at liberty to sell the bonds and appropriate the proceeds to his own use. That the Rhode Island court, without

hesitation, concedes. He was at liberty to put them upon the market, to sell them for such price as he could obtain, and use the proceeds so far as they would go in the payment of his loan. But undoubtedly the bonds were not salable except at a very great sacrifice. They were the obligations of an individual, secured by a mortgage on land, and were estimated by the president of the defendant company to be worth only one half of their face value. What happened was that the debtor, having lawful right to sell, did sell to his creditor; and being at liberty to use the proceeds for his own benefit, did therewith extinguish his debt. The fact is sworn to distinctly and decisively by Mr. Rolston, who transacted the business. He testified: "The General came to my office, into the office of the Farmers' Loan and Trust Company, and stated that it was impossible for him to pay that loan, and that we would have to take the bonds for the money we had advanced him; I cannot give you the exact words I said to that; I accepted his proposition; I know I said, 'Very well, General.'"

The witness adds later that it was his intention to release him from any personal obligation. No note had been given for the debt, so that there was nothing for the defendant to surrender except the unsecured debt. That was discharged. No demand or claim for principal or interest was afterward made by the vendee, and no offer of payment or intimation of existing liability proceeded from the debtor. The transaction between them ended then and there. The truth of this statement there is no just reason to doubt. The probabilities are strongly in its favor. General Burnside could make no better or more advantageous disposition of his bonds than to cancel his debt by a sale to the creditor. The latter stood in an awkward position and plainly could do no better. General Burnside was poor, and the creditor knew it, for Mr. Rolston says that outside of the bonds there was no means of recovering the debt, and that was in his mind when he accepted the bonds in discharge of it. That was all that he supposed he could get, and that he did get. Comment is

made upon the absence of any written memorandum. Beyond the legal question thus raised the circumstance breeds no reasonable doubt as to the facts. Plainly there was great respect on both sides, and corresponding confidence. Rolston loaned the $15,000 without even taking a note. The chains and fetters with which capital binds its debtors were notably absent. The confidence thus exhibited was quite naturally continued to the end. Two other circumstances are adverted to. It is said that the accounts of the defendant company ran on as before, and showed no cancellation of the loan. That is true, but an explanation of the custom and habit of the company in the keeping of its books furnishes an answer. The ultimate result of each separate loan was sought to be shown by the accounts, and so its treatment as a loan was continued until the final result was reached. The manner of keeping such an account, notwithstanding the surrender of collateral, was shown to be customary and usual, and while the bonds were not strictly collateral they had been supposed to be and invited no change in the customary accounts.

Another circumstance is claimed to be inconsistent with the story of a sale and to throw doubt upon its truth. The purchase of the bonds proved to end in a profit instead of a loss. Good management exercised on behalf of the bondholders resulted in the ultimate payment of the whole of the mortgage debt and gave to the defendant company over and above the principal and interest of its investment a surplus of a little over $5,000. General Burnside was dead. The defendant remitted that surplus to the administrator of his estate. It is now said that the account was kept and settled on the theory of a pledge, and so tends to contradict the proof of a sale. Mr. Rolston says that this remittance was a gift, and we are asked if we soberly believe in the existence of a moneyed institution surrendering a profit which it could legally hold. Well, we may admit, as a general rule that, " corporations have no souls," but if, in some exceptional instance, we discern the shadowy outline of one, at least we may suffer it to live.

While Mr. Rolston calls this remittance a gift, it was something more than that, and had another element about it. I believe that a sense of business honor has not utterly disappeared from among business men. More of it remains and among larger numbers than in our sometimes hasty judgments is commonly supposed. There are men whose sense of right is not fenced in by the boundaries of the law, and who feel impelled to do a just thing which no compulsion could force. I have mentioned the evident respect and confidence which characterized the relations between General Burnside and Mr. Rolston. The bonds were sold by the former when in some pecuniary distress. They were taken by the latter as the sole possible payment by the debtor, and with evident doubt as to the ultimate result, When instead of a loss they produced a profit a natural and honorable impulse would tend to produce the precise action which occurred. Whether Mr. Rolston regarded the profit as flowing from surrendered collateral or a direct sale of the bonds is totally immaterial. In either event it belonged to the company; in either event its restoration was an honorable duty which the defendant recognized and performed. We ought not, out of this just action, to frame an inference which should falsify the sworn statement of a sale of the bonds.

It is insisted, however, that the sale cannot stand because the contract was void under the statute of frauds. But that statute affects only executory and not executed contracts. (*Dodge* v. *Crandall*, 30 N. Y. 304.) It is the rule of evidence where one party or the other is seeking performance or damages for non-performance. It has no office to perform when the contract has been executed on both sides, has been fully carried out by the parties, and requires no aid from the law. That is the situation here. Long before this action was commenced Burnside had been discharged from his debt, the bonds had passed into the possession and ownership of defendant under the parol agreement; their interest had been

collected and appropriated by the owner, in part before the death of Burnside ; the bonds had been wholly paid, and the debtor's representatives had accepted the surplus. The whole contract, in every detail, and on both sides had been fully executed and all its purposes accomplished. To such a case the statute has no application.

Without, therefore, passing upon the questions raised upon the construction of Mrs. Burnside's will, we are of opinion that the order, was right and should be affirmed and judgment absolute ordered against plaintiff on his stipulation, with costs.

All concur.

Order affirmed and judgment accordingly.