## JONES v. PATRICK et al.

### (Circuit Court, D. Nevada. September 5, 1905.)

### No. 788.

1. STATUTE OF FRAUDS—CONTRACTS WITHIN—AGREEMENT TO SHARE PROFITS OF REAL ESTATE SPECULATION.

It is not essential to the validity of an agreement made by parties to share in the profits òf a contemplated speculation in real estate that it should be in writing; such agreement not involving an estate or interest in real estate within the statute of frauds.

2. SAME—STATUTE AS DEFENSE—EXECUTED CONTRACT.

Complainant and defendant entered into a verbal agreement to cooperate in endeavoring to find a purchaser at an advanced price for certain mining property on which defendant held an option bond and to share in whatever profit was realized. A sale was made, and defendant obtained as profit an interest in the property. *Held*, that such contract was not one for the sale of an interest in lands within the statute of frauds of Nevada (Cutting's Comp. Laws Nev. §§ 2694, 2696), and in any event, having been fully executed, except as to the division of profits, the statute could not be invoked to defeat a recovery by complainant of his share of the property so obtained by defendant, where the bill alleged that complainant rendered services and paid expenses in procuring the sale, and fully performed the agreement on his part.

In Equity. On plea in bar.

This is a suit in equity for the specific performance of an oral agreement or contract in relation to certain mines, mining claims, and locations situate in Goldfield mining district, Nev., and for a decree adjudging that defendants hold an undivided one-half of the one-fourth portion of the property described in the bill of complaint; that a conveyance therein mentioned, made by Lucien L. Patrick to the Nevada Mining & Exploration Company, be canceled; that the one-fourth interest in said property be partitioned off, by comissioners appointed for that purpose, between complainant and defendant Patrick; that said Patrick be required to make, execute, and deliver to complainant a good and sufficient deed of one-eighth of said property; and that an accounting be had between the parties, and the partnership existing between them be wound up, etc. In order to understand more clearly the nature of the alleged oral agreement between the parties, a brief synopsis of some of the averments in relation thereto will be given:

It is alleged that prior to the month of October, 1903, the defendant L. L. Patrick had entered into an agreement, lease, and option bond for the purchase from the owners of the mines, mining claims, and locations described in said complaint; that about the 18th day of October, 1903, the said agreement, lease, and option bond was in full force and effect; that on or about that day the complainant and defendant Patrick entered into an agreement to mutually devote their time and attention to obtaining a person or persons who would purchase said properties at a price greater than and in excess of the' amount specified in the lease; that it was further agreed between the parties that the said Patrick would remain in the vicinity of said mines and attend to the carrying out of said mutual agreement, if the said complainant would proceed to San Francisco and seek for parties who would provide the necessary money to make the first payment under said agreement to the owners of said locations, as provided therein, and make further payment thereunder; and it was then and there further understood and mutually agreed that the said complainant and the said defendant would divide mutually any moneys or profits made by them, or either of them, through selling said properties to a person or persons at a higher value or excess price than the purchase price specified in said agreement, and that they would divide any interest in said properties, or any of them, that could be obtained by the said parties, or either of them, by getting a

person or persons to advance the purchase price specified in said bond, and giving an interest in said properties, or any of them, to the said Patrick or the said complainant, or both of them; that in accordance with the terms of said agreement between said parties the complainant did on or about the month of October, 1903, go to San Francisco at his own expense, and did secure persons able and willing to make said payments and to purchase said mines and mining claims; that subsequently, and within the life of said agreement, purchasers were obtained who did buy the said property, and that the said complainant performed and fulfilled each and every covenant and agreement on his part to be performed and fulfilled in accordance with the terms of said agreement; that the said Patrick sold under bond the said mining property, and that good and sufficient deeds and conveyances were executed by him and his predecessors in interest under said bond to the said purchasers; that said Patrick secured and obtained in his own name, and as a profit in effecting the sale of said property, a one-fourth interest therein, and did sell one-half of said one-fourth interest for a large sum of money, to wit, about $7,500; that complainant has at divers times and places requested and demanded the said Patrick to keep the terms of said agreement and to pay to complainant one-half of all the property obtained by the said Patrick as and for a profit in effecting the sale of said property, and that said defendant Patrick has failed, neglected, and refused, and now does fail, neglect, and refuse, to comply with the terms of said agreement. It is further alleged that the defendant Patrick, for the purpose of defrauding the said complainant of his share of said property, has organized a corporation known as the "Nevada Mining & Exploration Company," solely for the purpose of taking over said other one-half of said one-fourth of said property, and the profits so as aforesaid obtained by defendant Patrick, and for the purpose of concealing the said property obtained as and for a commission and profit by said defendant Patrick; that in accordance with said fraud Patrick caused himself to be elected president, and his wife (defendant herein) to be elected vice president, of the corporation; that in pursuance of said fraud defendant Patrick gave to his wife a certain portion of the property and profits obtained by him as and for a commission for a sale of said property under said agreement.

To this complaint the defendants interposed a plea in bar in substantially the following terms: That said mining claims are valid quartz mining claims; that said defendant Patrick, together with his co-owners, are the owners of said claims, and have title to the same against every one other than the United States government; that the said property owned by Patrick was, prior to the 1st day of October, 1903, and ever since has been, real estate, and treated as such under the laws of the state of Nevada; that said alleged agreement, if the same was entered into, which these defendants do not admit, was verbal, and was never reduced to writing, nor was any memorandum thereof made in writing or signed by defendant Patrick, or by any of the said defendants; and in this connection, sections 2694 and 2696 Cutting's Compiled Laws of Nevada are fully set forth in the plea; and defendants plead the several matters contained therein in bar to the plaintiff's said demand in said bill. Defendants, for answer to the allegation of fraud and collusion and confederation set up in the bill of complaint in aid of this plea, and for that purpose solely, answering, deny that the defendant Patrick conveyed his interest in said mining claims to said defendant corporation without consideration, or for the purpose of defrauding or injuring the complainant, or placing said property beyond his reach in any suit that he might institute, and they deny that said acts pertaining to said conveyance were wrongful or fraudulent, and, on the contrary, aver that said conveyance to said corporation was made for a valuable consideration; and they plead the statute in bar to complainant's bill, and pray the judgment of this court whether they should be compelled to make any or further answer to the said bill, and to be dismissed, with their costs.

Haven & Haven, for complainant.
Key Pittman, for defendants.

HAWLEY, District Judge (after stating the facts). It must, at the outset, be admitted that several of the questions involved herein are exceedingly close, and require, as they have received, a careful consideration of the rules upon the subject at issue, under the facts stated in the pleadings. The arguments of the respective counsel, and briefs filed by them, show commendable zeal and careful search in the citations of authorities having any bearing upon the case. The matter of law involved herein has been ably presented by both sides, and the court has been thereby materially aided in a determination of the principles it considers applicable to the facts. In this connection, however, it is proper to state that the court does not deem it necessary to specially review the numerous authorities that have been cited by counsel, and will, in the main, content itself by enunciating the principles that are deemed to be controlling in arriving at the results to be reached.

The statutes of Nevada, pleaded by defendants, read as follows:

"Sec. 2694. No estate, or interest in lands, other than for leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance, in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized in writing."

"Sec. 2696. Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made."

Does the agreement set forth in the bill come within the prohibition of the terms of these provisions of the statute? This question opens up a wide field for investigation, and presents many legal points for consideration. Contracts, and agreements in relation thereto, are as various "as the whirling changes of the kaleidoscope," and courts are compelled to keep constantly in mind the particular facts of each case, in order to determine from the authorities the legal principles applicable thereto. It will be admitted that if the agreement between complainant and Patrick can be properly construed as a contract for the sale of real property, or of an interest therein, it would necessarily fall within the prohibition of the statute. Dunphy v. Ryan, 116 U. S. 491, 495, 6 Sup. Ct. 486, 29 L. Ed. 703.

The real question to be determined is whether or not the agreement, as alleged in the complaint, does clearly create, grant, assign, surrender, or declare any estate or interest in lands, or whether it is a contract for the sale of any lands or any interest in real estate. It has been held that courts are not justified in straining the terms of a contract, so as to bring it within the statute of frauds and do a great injustice to the complainant. Watters v. McGuigan, 72 Wis. 155, 157, 39 N. W. 382; Hobbs v. McLean, 117 U. S. 567, 576, 6 Sup. Ct. 870, 29 L. Ed. 940. On the other hand, it may be said that courts ought not to be astute to discover reasons to evade the statute of frauds. It

is not essential to the validity of an agreement made by parties to share in the profits of a contemplated speculation in real estate that it should be in writing. The courts have frequently held that such agreements cannot be said to involve such an interest in real estate as, under the terms of the statute, are required to be in writing. Wright v. Smith, 105 Fed. 841, 843, 45 C. C. A. 87; Coward v. Clanton, 79 Cal. 23, 26, 21 Pac. 359; Gorham v. Heiman, 90 Cal. 346, 358, 27 Pac. 289; Byers v. Locke, 93 Cal. 493, 496, 29 Pac. 119, 27 Am. St. Rep. 212; Bates v. Babcock, 95 Cal. 479, 484, 487, 30 Pac. 605, 16 L. R. A. 745, 29 Am. St. Rep. 133; Babcock v. Read, 99 N. Y. 609, 1 N. E. 141; King v. Barnes, 109 N. Y. 267, 285, 16 N. E. 332; Benjamin v. Zell, 100 Pa. 33, 36; Howell v. Kelly, 149 Pa. 473, 24 Atl. 224; Flower v. Barnekoff, 20 Or. 132, 138, 25 Pac. 370, 11 L. R. A. 149; Holmes v. McCray, 51 Ind. 358, 363, 19 Am. Rep. 735; Meagher v. Reed, 14 Colo. 335, 370, 24 Pac. 681, 9 L. R. A. 455; Carr v. Leavitt, 54 Mich. 540, 542, 2 N. W. 576; Lesley v. Rosson, 39 Miss. 368, 372, 77 Am. Dec. 679; Davenport v. Buchanan, 6 S. D. 376, 381, 61 N. W. 47; McClintock v. Thweatt (Ark.) 73 S. W. 1093; Doyle v. Burns, 123 Iowa, 488, 498, 99 N. W. 195; Garth v. Davis (Ky.) 85 S. W. 692.

Different opinions have been expressed in the various cases as to whether or not agreements of this general character between the parties constitute them copartners. These differences, however, are more in relation to the particular facts existing in each case than to the principles of law applicable thereto. In the present case it will be admitted that there was no copartnership existing between complainant and Patrick, in the full sense and meaning of that term. There was no agreement to share the losses, as well as the profits, of the enterprise. But—

"It is not necessary, in order to constitute a partnership, that there be an express agreement that each party shall bear a share of any losses which may occur in the business. This may be inferred from the other provisions of the contract, and the nature of the business, and the relation of parties to the business to be transacted." Richards v. Grinnell, 63 Iowa, 44, 51, 18 N. W. 668, 50 Am. Rep. 727.

Many of the cases, applicable on one ground or another to the particular facts of this case, proceed upon the theory that, although a full partnership did not exist, yet many of the principles applicable to partnerships should be applied. It matters not what name is given to it by the parties, it must be left to the courts to determine its general nature from the facts. Whether it is called a contract, an agreement, or a partnership, the law steps in and from the facts determines the rights of the respective parties thereunder.

In Shea v. Nilima, 133 Fed. 209, 213, 66 C. C. A. 263, the court, in the course of its opinion, said:

"The entire steps taken by the parties must be considered. Whatever was done in furtherance of the common purpose, understanding, and agreement must be treated as an entire or continuous transaction, so far as their rights and obligations in respect to the enterprise are concerned. If by words, acts, and deeds they joined together in a common purpose and agreed to

share equally in the enterprise, they were, in a certain sense, partners, and such a partnership may be formed without any written articles between the parties."

In Newell v. Cochran, 41 Minn. 374, 378, 43 N. W. 84, 85, the court, after declaring that the agreement between the parties to purchase real property for the purpose of selling again at a profit for their joint benefit was valid, though not in writing, said:

"We need not pause to consider whether the court intended to find that there was not a complete partnership. From the facts specifically found the legal conclusion follows that the relation created between the parties was in the nature of a partnership, and this relation imposed upon the associates the duty of fair and open dealing between themselves in the prosecution of the common enterprise."

See, also, Fountain v. Menard, 53 Minn. 443, 445, 55 N. W. 601, 39 Am. St. Rep. 617.

In King v. Barnes, 109 N. Y. 267, 285, 16 N. E. 332, 336, it was claimed that the agreement to purchase land on joint account was void by the statute of frauds, as creating an interest in real estate by parol, that it was contrary to public policy, and without adequate consideration, and was so incomplete and uncertain in its terms that specific performance of its provisions could not be decreed. The court said:

"We consider these objections to be untenable, and some of them too frivolous to merit serious consideration. A sufficient consideration is afforded to it by the mutual promises of the respective parties to contribute equally to the capital required to carry out the contemplated enterprise and their agreement to share equally in the profits and advantages expected to accrue therefrom. It is entirely immaterial whether this agreement constituted a partnership in a technical legal sense, or whether it was a joint enterprise to be conducted by the parties for their mutual benefit. So far as their rights and liabilities are concerned in this case, the result is the same, and rests upon the express terms of the agreement, and they are now to be enforced upon the principles applying to partnership transactions."

The general principle in relation to the performance, or part performance, of verbal agreements was well stated by Lord Cottingham in Mundy v. Joliffe, 5 Mylne & C. 167, 177, as follows:

"Courts of equity exercise their jurisdiction in decreeing specific performance of verbal agreements when there has been part performance, for the purpose of preventing the great injustice which would arise from permitting the party to escape from the engagements he has entered into upon the ground of the statute of frauds, after the other party to the contract has, upon the faith of such engagement, expended his money, or otherwise acted in execution of the agreement. Under such circumstances, the court will struggle to prevent such injustice from being effected; and with that object, it has on the hearing, where the plaintiff has failed to establish the precise claims of the agreement, endeavored to collect, if it can, what the terms of it really were."

This rule has been adhered to by the courts of this country. In such cases it must, of course, clearly appear that the improvements were made, money advanced, or services rendered by the complainant with a view to the performance of the contract. Nothing is to be considered as a part performance which does not put the complainant

in a situation which is a fraud upon him unless the agreement is fully performed. Riggles v. Erney, 154 U. S. 244, 253, 14 Sup. Ct. 1083, 38 L. Ed. 976; People's Pure Ice Co. v. Trumbull, 70 Fed. 166, 175, 17 C. C. A. 43; Evans v. Lee, 12 Nev. 393, 398; 1 Story, Eq. Jur. §§ 761, 764.

The case in hand must be considered solely in the light of the averments contained in the complaint. It differs in its facts from many of the cases referred to where large amounts of money had been expended upon the faith of the agreement. It does not appear that Patrick had advanced any money in order to secure the bond or option. It can be inferred from the allegations of the complaint that he obtained the same solely for the purpose of speculation. To make the existing conditions profitable, it was necessary to procure a purchaser for the property at an advance price from that mentioned in the bond. Neither Patrick nor Jones intended to buy the property outright. The agreement was not to advance money or make improvements, but to perform services which would not, in the very nature of the terms of the agreement, require the expenditure of money, except such as might arise from the incidental and individual expenses of each in the performance of the services to be rendered by them.

The sole object of the alleged agreement was to secure a purchaser "who would purchase said properties at a price greater and in excess of the amount specified in said lease, agreement, and option bond to be paid to the owners of said locations as the purchase price thereof." The parties mutually agreed to devote their time in efforts to secure such a purchaser, and agreed to share equally the profits that might be realized by a sale of the property. In this connection, it is alleged:

"That the said complainant performed and fulfilled each and every covenant and agreement on his part to be performed and fulfilled, in accordance with the terms of said agreement."

This allegation is certainly sufficient to show the performance of conditions on his part. Moritz v. Lavelle, 77 Cal. 10, 12, 18 Pac. 803, 11 Am. St. Rep. 229. It does not appear from any of the averments in the complaint that there were any other or further services to be rendered than to find a purchaser who would buy the property at such price, as to realize profits on the option held by Patrick. There was nothing further to be done, except to "divide the profits" realized by the transaction, under the terms of the agreement. The statute does not apply to such executed agreements. Walsh v. Colclough, 56 Fed. 778, 781, 6 C. C. A. 114; Huntley v. Huntley, 114 U. S. 394, 5 Sup. Ct. 884, 29 L. Ed. 130; Bibb v. Allen, 149 U. S. 481, 497, 499, 13 Sup. Ct. 950, 37 L. Ed. 819; Whitney v. Hay, 181 U. S. 77, 89, 21 Sup. Ct. 537, 45 L. Ed. 758; Bless v. Jenkins, 129 Mo. 647, 657, 31 S. W. 938; Tinkler v. Swaynie, 71 Ind. 562, 568; McCarthy v. Pope, 52 Cal. 561; Brown v. Farmers' L. & T. Co., 117 N. Y. 266, 273, 22 N. E. 952.

The respective parties could not have enforced the agreement to render the services as long as the verbal agreement remained in force; but after this duty was fully performed, and nothing remained but division of profits, this part of the agreement cannot be avoided by

pleading the statute. As was said in Browne on Statute of Frauds,. § 116:

"Where the contract has been in fact completely executed on both sides, the rights, duties, and obligations of the parties resulting from such performance stand unaffected by the statute. * * * When fully executed on both sides, the positions of the parties are fixed, subject, of course, to the power of a court of equity to afford relief in cases of fraud and mistake."

It is immaterial whether the profits derived from the transaction are in money, or consist of an interest in real estate. An action for the recovery of the money can be maintained if the profits have been reduced to money, or a suit for the division of land if the profits are in that form. Seymour v. Freer, 8 Wall. 202, 215, 19 L. Ed. 306; Petrie v. Torrent, 88 Mich. 43, 58, 49 N. W. 1076; Traphagen v. Burt, 67 N. Y. 30, 34; Pennybacker v. Leary, 65 Iowa, 220, 21 N. W. 575; Bates v. Babcock, 95 Cal. 479, 30 Pac. 605, 16 L. R. A. 745, 29 Am. St. Rep. 133; Gibbons v. Bell, 45 Tex. 417.

In Seymour v. Freer, supra, the court said:

"An action at law, sounding in damages, may undoubtedly be maintained in such cases for the breach of an express agreement by the trustees; but this in nowise affects the right to proceed in equity to enforce the trust and lien created by the contract. They are concurrent remedies. Either, which is preferred, may be selected. The remedy in equity is the better one. The right to resort to it, under the circumstances of this case, admits of no doubt, either upon principle or authority."

In Bunnel v. Taintor's Adm'r, 4 Conn. 568, 573, the complaint averred that the plaintiff and Taintor, the defendant, became jointly interested in all the profits which might or should be made on the purchase and sale of sundry large tracts of land, which had been previously purchased of Dow, Smith, and others through the plaintiff's agency, and this was sought to be proven by oral testimony. It was held that the case did not come within the statute of frauds. The court, in the course of its opinion, said:

"The agreement between the parties was not 'upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them,' nor did it contemplate any transfer of land, or any interest in land (Bostwick v. Leach, 3 Day, 476), nor anything annexed to the realty, as part and parcel of it, which was by law alone transferable by a deed. But the object of the contract was profits as a compensation for services rendered, and that the purchase and sale of land should be made by Taintor, as in fact it was, through the plaintiff's agency. The case may not inaptly be considered as a species of copartnership, the fund on the plaintiff's part consisting of services, and of property on the part of the defendant, of which he had a title legally evinced, the sale of which property, by the defendant's deed, if it resulted in profit, was to constitute personal estate, divisible between the parties."

. It is true that the determination of that question was not necessarily involved in that case.. It was disposed of on other grounds, but the principle announced by the court is very persuasive in its application to the facts of this case.

In Bruce v. Hastings, 41 Vt. 380, 385,. 98 Am. Dec. 592, the court, in discussing the question whether the alleged agreement between the parties was within the statute of frauds, said:

"The agreement between the defendant and Nelson required the latter to convey the land to the defendant, or to convey it to the purchasers thereof under the direction of the defendant. Nelson did not convey to the defendant, but did convey the land to the parties who purchased it of the defendant, and the defendant received the money. The defendant did just what his agreement with the plaintiff contemplated he should do—that is, he converted the land into money; and this action is brought to recover the plaintiff's share of it under the agreement. The action is not brought to recover damages for the breach of an executory contract for the purchase of land, nor for the purchase of an interest in land. In Trowbridge v. Wetherbee, 11 Allen, 361, the court held that a parol promise to pay another a portion of the profits made by the promisor in a purchase of real estate is not within the statute of frauds; and, if founded on a sufficient consideration, will support an action. * * * It appears that the plaintiff claimed, and gave testimony tending to prove, that he advanced money to the defendant to be paid to Nelson for the property, and that the plaintiff otherwise aided the defendant in the purchase and sale of the property, relying upon the defendant's promise to give the plaintiff a portion of the profits as compensation for the assistance which he contributed to the defendant, as above stated. We are of opinion that the consideration is sufficient."

The plea is overruled.