FRIEDMAN et al. v. ENDER et al.

(Supreme Court, Equity Term, Monroe County. March 25, 1909.)

1. FRAUDS, STATUTE OF (§ 129*) — PART PERFORMANCE — AGREEMENTS RELATING TO REAL PROPERTY.

Payment of part of the purchase price and possession by the purchaser under an oral agreement for the purchase of land is not sufficient to take the contract out of the statute of frauds, unless the purchaser makes improvements upon the land.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 301–326; Dec. Dig. § 129.*]

2. FRAUDS, STATUTE OF (§ 139*) — OPERATION AND EFFECT OF STATUTE — CONTRACTS COMPLETELY PERFORMED.

A deed, which is executed and delivered pursuant to an oral contract for the purchase of land, ratifies and validates the oral contract.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 340; Dec. Dig. § 139.*]

3. EVIDENCE (§§ 215, 248, 265*)—ADMISSIONS.

A memorandum of a contract for the sale of land, prepared and retained by the grantor, and not signed by the purchaser, is evidence against the grantor of the terms of the contract, but is not conclusive evidence, and is not evidence against his wife.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 754–759, 953–964, 1029–1050; Dec. Dig. §§ 215, 248, 265.*]

4. VENDOR AND PURCHASER (§ 281*)—EVIDENCE AS TO CONTRACT.

Evidence in an action to establish a vendor's lien *held* to show that the contract price for the land was the amount paid by the grantor for the land plus the amount of a sewer assessment and interest on the purchase price.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 281.*]

5. DEEDS (§ 100*)—CONSTRUCTION—PURPOSE IN INSTRUMENT.

A deed must be construed in the light of the purpose for which it was given.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 239; Dec. Dig. § 100.*]

6. EVIDENCE (§ 419*)—PAROL EVIDENCE AFFECTING WRITINGS—DEEDS—CONSIDERATION.

The consideration stated in a deed and the acknowledgment of its receipt is not conclusive as between the parties, and the true consideration and the amount, if any, actually paid, may always be shown; the deed itself being merely presumptive evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1912; Dec. Dig. § 419.*]

Action by John Friedman and another against John Ender and others. Judgment for plaintiffs.

By the amended complaint this is an action to establish a vendor's lien for about $230, besides interest, upon a house and lot in the city of Rochester, described in the complaint, and to enforce such lien by foreclosure

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and sale, and to recover judgment for the deficiency, if any, against the defendant Ender. The issues tried are those raised by the answer of the defendant Ender, the owner of the property. Plaintiffs are husband and wife, and had title to this house as tenants by the entirety. A few days before the 1st day of April, 1899, they made an oral agreement to sell the property to the defendant Ender. It was then subject to a mortgage which plaintiffs had made to one Brayer, on which was unpaid $509.47. The oral agreement as claimed by the plaintiffs was that Ender should pay them $750 for the property, being the amount which it had cost them, together with $31.60 for local assessment for the west side sewer, the amount of three annual installments, two of which plaintiff had paid, and the other was due and payable, making the total purchase price $781.60; that Ender was able to pay only $5 in cash at the time, but desired immediate possession of the property, so it was agreed he should have possession and make payments at the rate of $2.50 per week and $21 every three months, until $60 had been paid, when papers were to be drawn between the parties; and that Ender was to pay interest at the rate of 5 per cent. upon the unpaid purchase money and all taxes and assessments accruing after he took possession.

Ender denies that he agreed to pay the $31.60 sewer assessments, or that he agreed to pay any interest on the purchase price unpaid, or any taxes or assessments accruing before he received the deed of the property. He did make payments to the plaintiffs to the amount of $60 during the first year, and during the next three years he made payments to Mr. Brayer upon the mortgage, and from July, 1903, to July, 1904, he made various payments to the plaintiffs, amounting to $123.25. A few days before the 18th of October, 1904, he requested the plaintiffs to give him a deed of the property, to enable him to borrow by mortgage from the Monroe County Savings Bank sufficient money to pay off the Brayer mortgage and to pay the plaintiffs the balance due them on the purchase price, and on that day, pursuant to his request and relying upon his promise, plaintiffs did execute and deliver to him such a deed, which had been prepared by Ender's attorney and which was in form a full-covenant deed, stating the consideration as $750, receipt of which was acknowledged. Thereupon Ender borrowed from the Monroe County Savings Bank by mortgage $900, out of which he paid $384.36, the balance then due on the Brayer mortgage, and the following liens then due on the property: $10.45 county taxes, $88.90 West Side sewer assessments, $9.96 city taxes, and also $13.38, attorney's fees and expenses of securing the loan, leaving $392.95, which he received in cash. He paid none of these moneys to plaintiffs, and, although promising from time to time to do so, he has never made them any further payment, and shortly after he told the plaintiffs that he had been advised that he was not obliged to pay them any more money.

At the time the oral agreement was made the plaintiff John Friedman made an entry in a memorandum book in the German language, of which the following is a translation: "Rochester, N. Y., the first of April, 1899. I certify herewith that John Ender purchased a house from John Friedman for $750.00 and that he has paid down $5.00 in payment, by $2.50 rent per week until $60.00 are paid in cash." This entry was made on the top of the first page of the book, and was not signed or delivered to Ender. The book was used subsequently to enter the payments which plaintiffs received. The balance of the first page is occupied by such entries, all the next page, and half the third page, and under two of the later entries on the third page the plaintiff John Friedman signed his name. During the first year the plaintiffs made two payments of $21 each of interest maturing on the Brayer mortgage at the request of Ender and on his promise to reimburse them, and $42 of the moneys which Ender paid to the plaintiffs was for that purpose.

Albert H. Stearns, for plaintiffs.
Charles S. Williams, for defendant Ender.

FOOTE, J. The contention of the defendant is that the oral agreement is void under the statute of frauds, both because it was not re-

duced to writing and was not to be performed within one year, or that the written memorandum in Friedman's account book should be treated as a sufficient writing, and by it he did not agree to pay the $31.60 West Side sewer assessment, or any interest on the purchase money, or any taxes or assessments accruing while he was in possession before he received his deed, and that on this basis he has fully paid the $750 purchase price in the amounts paid directly to the plaintiffs and to satisfy the existing liens at the time he received his deed and procured his mortgage loan in 1904. Defendant also contends that the full-covenant warranty deed is conclusive that the consideration was limited to $750, that it was fully paid, and that plaintiffs were to convey free of all liens or incumbrances. In my opinion none of these contentions, except the first, are well founded.

It is held by some authorities that a purchaser taking possession of the land purchased under an oral contract is such a part performance of the contract as takes it out of the statute of frauds; but the better opinion, I think, is that mere possession is not sufficient, unless followed by making improvements upon the property, by reason of which the purchaser would be prejudiced if the contract were not carried out. Assuming, then, that the payment of $5 toward the purchase price and taking possession of the property do not make the oral contract valid and enforceable, and that the written memorandum is not sufficient for that purpose, still it unquestionably became a valid contract on the 18th of October, 1904, when it was so far performed as that title to the property was transferred by plaintiffs to the defendant by the deed made on that day. It is not claimed by the defendant that any new or different contract was made, and it stands conceded that the deed was made in part fulfillment of the oral contract of 1899. That oral contract was ratified and validated by the deed. Dodge v. Wellman, 1 Abb. Dec. 512; Bidon v. James, 3 N. Y. St. Rep. 734; Johnson v. Hathorn, *42 N. Y. 126; Beardsley v. Duntley, 69 N. Y. 577; Thomas v. Dickinson, 12 N. Y. 364; Brown v. Farmers' Loan & Trust Co., 117 N. Y. 266, 22 N. E. 952.

We must then determine precisely what that oral contract was. The memoranda in Friedman's account book made at the time and the deed made five years later are undoubtedly evidence favorable to the defendant's claim that the total purchase price was $750, and that the defendant was not to pay interest upon the purchase money or to pay taxes accruing before he received his deed. But they are not conclusive. The memorandum is the declaration of John Friedman alone, and not evidence against his wife, Caroline. Moreover, it was not intended as a complete statement of the contract. It was made by a man ignorant of the English language and of business of that character, without the aid of counsel, or any help or advice. While it is receivable in evidence against him, it is not conclusive even upon him, and does not stand in the way of showing by other evidence what the actual transaction was. Nor do I think it inconsistent with his present claim. He bought the property for $750, and he agreed to sell it for what it cost him; hence the use of that sum as the selling price. But he had paid out some money for sewer taxes, and that

was to be refunded to him. He did not consider that as a part of the selling price of the property, but an incidental expense of carrying it.

On the day the oral contract was made John Friedman and the defendant went together to call on Mr. Brayer, the holder of the mortgage, to arrange with him to accept the future payments upon his mortgage from the defendant Ender, and in his presence they both stated the terms of the sale. Mr. Brayer has a distinct recollection of what was said to him, and is an intelligent and entirely disinterested witness. He fully corroborates the testimony of both the plaintiffs to the effect that Ender was to pay the sewer assessment in question, interest on the unpaid purchase price at the rate of 5 per cent. per annum, and was to get $750 net for the property over and above taxes and assessments.

The testimony of the defendant Ender is wholly uncorroborated. It is also very improbable. He does not deny that the Friedman proposition was to sell the property for what it had cost them; but he says nothing was said about sewer taxes, and nothing about paying interest upon the unpaid purchase price. His position is that, although he was to have possession and use of the property, and no definite time was fixed for completing the payment of the purchase price, and that he expected to pay it in very small weekly payments, still he was to pay no interest upon the money, nor any of the current taxes. It is safe to say that if the Friedmans were in their right minds, they would not make such a one-sided contract as this, and I am satisfied from the evidence that they did not.

Assuming, then, that the contract was as claimed by the plaintiff, what was the legal effect of the full covenant warranty deed? Did it in any way alter the contract as made? I think not. It is clear that it was not so intended; for it was signed by the Friedmans at defendant's request, for the express purpose of enabling him to carry out the contract as originally made, by means of the money which he could borrow on the property after receiving the deed. If he had any secret intention to use it as a means of defrauding the plaintiffs of the balance due them, he certainly did not disclose such intention to the Friedmans. This deed was made either in part performance of the original oral contract, or it represents an entirely new contract, or rather superseded the prior contract, and in it is contained the entire contract then remaining. If the latter, why did Ender proceed to pay off the mortgage and the back taxes? The deed contained a covenant that the property was free of incumbrance, and if these incumbrances were not for him to pay there was an immediate breach of the covenant of warranty. On this occasion, as before, the Friedmans had no counsel. They relied upon what was told them by Ender's attorney, and he testifies that he represented to them that it was necessary for them to sign this deed to put Ender in a position to complete his purchase by paying off the Brayer mortgage and getting the money with which to pay them the balance of the purchase price. This is not denied by Ender, but is a conceded fact in the case. The deed must, therefore, be construed in the light of the purpose for which it was given, and so construed, it in no way altered the original contract.

But the consideration stated in a deed and the acknowledgment of its

receipt is never conclusive, even as between the parties, and the true consideration, and the amount, if any, actually paid, may always be shown. The deed itself is merely presumptive evidence, and the presumption may be rebutted by other evidence. Whitbeck v. Whitbeck, 9 Cow. 266, 18 Am. Dec. 503; McKinster v. Babcock, 26 N. Y. 378.

My conclusion is that as against the defendant Ender plaintiffs are entitled to a vendors' lien for the balance of the purchase price due them, and to the usual judgment for the enforcement thereof, with costs against the defendant Ender.

Findings may be prepared accordingly, which will be settled on two days' notice.