[No. 19017.   In Bank. — August 4, 1892.]

FRANK E. BATES, APPELLANT, *v.* E. S. BABCOCK ET AL., RESPONDENTS.

APPEAL — REVIEW OF DEMURRER — ERRORS AGAINST RESPONDENT. — Where a demurrer of a defendant is overruled for want of presentation, upon an appeal by the plaintiff from a judgment for the defendant, the respondent cannot urge any grounds of special demurrer, or any errors committed against him, for the purpose of sustaining a judgment erroneously rendered in his favor after a trial upon the merits; but the appellate court can only consider such errors of the court as contributed to the rendition of the judgment for the defendant, and can consider the demurrer only so far as it goes generally to the cause of action, and affects the question whether the complaint is sufficient to render the exclusion of evidence under it erroneous.

PLEADING — UNCERTAINTY — CONSTRUCTION. — The character and effect of an averment that may be uncertain in one of its clauses is not limited to a construction of that clause merely, but the averment is to be considered as a whole, and in connection with the entire complaint.

ID. — ALLEGATION AS TO PARTNERSHIP IN LANDS — DIVISION OF PROFITS — OWNERSHIP OF LAND. — An allegation that defendants agreed upon certain terms to become equal partners with the plaintiff in certain real property, which the complaint elsewhere shows was held by plaintiff upon a dry, naked trust for third parties, and was purchased from the beneficiaries and transferred to another person as trustee for plaintiff and defendants, does not necessarily imply an agreement for a conveyance of the property to the defendants; and taken in connection with the other averments of the complaint, and with an averment immediately following, that they were to share equally all sums received for the property, and all profits and losses accruing on account thereof, shows that the agreement was for a partnership in the profits that might result from dealing in the land, and had no necessary relation to the ownership of the land.

PARTNERSHIP — DEALING IN LANDS — STATUTE OF FRAUDS — ORAL AGREEMENT — EVIDENCE. — A partnership may be formed for the purpose of dealing in lands, by buying and selling lands generally, or it may be limited to a speculation upon a single venture; and like any other contract of partnership, it is an agreement to share in the profit and loss of certain business transactions, and does not contemplate any transfer of land from one party to the other, or the creation of any interest or estate

in lands, other than a pecuniary interest, and need not be in writing under the statute of frauds, but may be formed by oral agreement and proved by parol evidence.

ID. — ACQUISITION OF LANDS BY PARTNERSHIP — EQUITABLE RIGHTS OF PARTNERS. — Though such partnership agreement does not of itself create any interest or estate in land, and a bill for the conveyance of lands could not be maintained thereunder, yet by the subsequent acts of the parties, rights are acquired in reference to land purchased in pursuance of the agreement which a court of equity will protect against any attempt to make the statute of frauds an instrument of fraud, by raising an equity superior to the legal title, and controlling the legal title in subordination thereto.

ID. — INTEREST IN LANDS — TRUST RESULTING BY OPERATION OF LAW — PAROL EVIDENCE OF PARTNERSHIP. — If a partnership is proved between the parties upon sufficient evidence, they would have an interest in the lands acquired which forms a portion of the assets of the partnership by reason of a trust resulting by operation of law as an incident to such partnership, but that fact would not constitute a reason for excluding parol evidence to establish the existence of the partnership.

ID. — PARTNERSHIP ASSETS — LANDS TREATED AS PERSONALTY. — Lands acquired by a partnership for partnership uses constitute partnership assets, and will be treated in equity as personalty, whether the partnership was formed by oral or written agreement; and the same principle applies when the object of the partnership is to deal in lands which are purchased with partnership assets.

ID. — SETTLEMENT OF PARTNERSHIP — CONVERSION OF ASSETS INTO MONEY — SOURCE OF TITLE. — A court of equity, in the settlement of partnership accounts and the conversion into money of partnership assets, whether real or personal, and their division among the partners, never inquires into the source of title of such assets, or in whose name they are held.

ID. — DIVISION OF PROCEEDS OF SALE OF LANDS — STATUTE OF FRAUDS NO DEFENSE. — In an action for division of the proceeds after a sale of lands under an oral partnership agreement to deal in lands, the statute of frauds is not allowed as a defense thereto; and the same principles which apply to such an action are applicable in an action to subject land which has become a portion of the assets of such a partnership to a sale and distribution of proceeds among the partners by a court of equity.

STATUTE OF FRAUDS — EXECUTED AGREEMENT. — The statute of frauds has no application to an executed agreement.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Sprigg & Barber*, for Appellant.

*Works, Gibson & Titus*, and *Works & Works*, for Respondent.

HARRISON, J. — The plaintiff brought this action against the defendants for an accounting upon a partnership agreement between them for the purchase and disposition of certain real estate in San Diego. At the trial of the action, the plaintiff offered himself as a witness, and under the objection of the defendants that it was incompetent and immaterial, gave testimony tending to show that an oral agreement had been made between himself and the defendant Babcock, acting on behalf of the defendant the Coronado Beach Company, of which he was president, by which they were to pay off the encumbrances upon certain real estate, sell and dispose of the same, and share the profits and loss in dealing therein; that for that purpose he gave to the defendants fifteen thousand dollars with which to pay certain claims and encumbrances thereon, and that the same was so applied; and that at the request of the defendant Babcock, a conveyance of the property was executed to one Hubbell, who was the secretary of the defendant corporation. After this testimony had been given, the defendants moved to strike out all portions thereof "relating to an agreement for an alleged partnership between the plaintiff and the defendants, or either of them, in the land described in the complaint, or any partnership between the parties, upon the ground that the same is incompetent and immaterial; that a partnership of the character alleged in the complaint must be proved by an instrument in writing, signed by them, or one of them." The court granted the motion, saying that "the contract, as alleged in the complaint, and supported by the evidence, is one clearly for an interest in lands, and as such is void under the statute of frauds." Upon the submission of the cause, the court, in its decision, found that there had been no agreement for a partnership in the land, and rendered judgment in favor of the defendants. From this judgment, and an order denying his motion for a new trial, the plaintiff has appealed.

We cannot, upon this appeal, consider the objections

to the complaint that were made by the demurrer
thereto, except the one specifying that the complaint
does not state facts sufficient to constitute a cause of ac-
tion.    The demurrer was overruled for "want of presen-
tation," and the defendants, having gone to trial upon
their answer, obtained a judgment in their favor upon
the merits.    Upon an appeal by the plaintiff from that
judgment, we can consider only such errors of the court
as are shown to have contributed to its rendition, and
not such as might have defeated a contrary judgment.
If a judgment in favor of the defendant is the result of
errors in excluding evidence that should have been re-
ceived, he, as respondent upon an appeal, cannot, for the
purpose of sustaining that judgment, have a considera-
tion of errors against him which were entirely discon-
nected with the trial, or the judgment as rendered.
Objections to a complaint which should be pointed out
by special demurrer, such as uncertainty or ambiguity,
are insufficient, unless so specified, to defeat a verdict
against the defendant; nor can they, if specified and
overruled, be considered for the purpose of sustaining
a judgment in his favor that was erroneously ren-
dered after a trial upon the merits.    It is only when
there is in the complaint an entire absence of aver-
ment of a fact essential to a recovery, so that no evi-
dence of that fact could be received at the trial, that a
judgment in favor of the plaintiff cannot be sustained;
but if the objection be merely that such fact is defect-
ively alleged, evidence received under such averment, if
sufficient, will sustain the judgment.    While the com-
plaint in the present case is not entirely free from criti-
cism, and might have been made more certain and
precise in some of its averments, yet we think that it
contains a sufficient statement of facts to justify the
court in receiving evidence thereof, and if sufficient to
sustain the averments, to render a judgment as asked
by the plaintiff.

The character and effect of an averment that may be
uncertain in one of its clauses is not limited to a con-

struction of that clause merely, but the averment is to be considered as a whole, and in connection with the entire complaint. The averment that the defendants agreed with the plaintiff that if he would pay certain claims against the property "they would become equal partners with him in the said property" does not necessarily imply an agreement for a conveyance from him to them, and taken in connection with the averment immediately following, viz., "and would share equally with him, in the proportion of one half to plaintiff and one half to defendants, all sums received for said property, and all profits and losses accruing on account thereof," which is evidently inserted by way of explanation, shows that the agreement was for a partnership in the profits that might result from dealing in the land, and had no necessary relation to the ownership of the land.

It appears from the complaint that at the time of this agreement the property in question was owned by one Miller and his wife, and that the defendant corporation held certain mortgages thereon, which were subordinate to certain other liens, and that the title to the property stood in the name of the plaintiff, and was held by him "as trustee for the benefit of said Miller and wife." It does not appear that the plaintiff had any beneficiary interest in the land, and the averment that five thousand dollars of the money advanced by him under the agreement was paid to the Millers "for a release from the said trust in their favor" confirms the inference that it was merely a dry, naked trust. The subsequent averment that "in pursuance of said agreement," then made, the plaintiff paid to the defendants fifteen thousand dollars with which to remove certain charges and encumbrances, and that "all of said property was duly transferred by plaintiff to O. S. Hubbell, Esq., secretary of said Coronado Beach Company, as trustee for the parties hereto, to facilitate a sale," and that with the concurrence of the defendants the plaintiff paid liens and debts on account of said property amounting to

forty-two thousand dollars, removes all possibility of construction that the agreement was for a sale of the property to the defendants, or for the creation of an interest or estate therein, and shows that the parties dealt with the property as assets of their said partnership.

A partnership may be formed for the purpose of dealing in lands, as well as for dealing in personal estate, or for engaging in professional, or commercial, or manufacturing occupations. Like any other contract of partnership, it is an agreement to share in the profit and loss of certain business transactions. Such a partnership may be formed for the purpose of buying and selling land generally, or it may be limited to a speculation upon a single venture. (*Dudley* v. *Littlefield,* 21 Me. 422; *Chester* v. *Dickerson,* 54 N. Y. 1; 13 Am. Rep. 550; *Williams* v. *Gillies,* 75 N. Y. 201.)

Whether such a partnership can be formed, except by an agreement in writing, has been the subject of conflicting decisions. There is a *dictum* in *Gray* v. *Palmer,* 9 Cal. 639, to the effect that it must be in writing, for which Story on Partnership, section 83, is cited as authority; and in *Smith* v. *Burnham,* 3 Sum. 458, it was so held by that distinguished jurist. The great weight of modern authority, however, is in support of the rule that such a partnership may be formed in the same mode as any other, and that its existence may be established by the same character of evidence. It was so stated in *Coward* v. *Clanton,* 79 Cal. 23, where it was held that an agreement for the purchase of a tract of land, and its subdivision and sale in parcels, and for a division of the profits resulting therefrom, in which one party was to furnish the capital and take a conveyance of the land, and the other to furnish the skill and labor in making the sales, could not be avoided after the transaction had been completed, merely because it was not in writing. More than a hundred years ago it was held by Lord Thurlow, in *Elliot* v. *Brown,* reported in 3 Swanst. 489, 1 Vern. 217, that the right of survivorship in a joint demise of a farm was destroyed by reason of the tenants

having farmed the land upon joint account, and thus by their acts made it partnership assets. The question was very fully considered by Vice-Chancellor Wigram in *Dale* v. *Hamilton,* 5 Hare, 369, wherein previous decisions involving similar principles were reviewed, and it was held that under the principles of those decisions the existence of such a partnership could be shown by general evidence, without the necessity of a written agreement. In that case a parol agreement had been entered into, under which a tract of land was to be purchased in the name of one McAdam, and laid out in lots, and resold, he furnishing the capital and the plaintiff the skill and labor necessary therefor, and the profits resulting from the venture were to be divided between them. The purchase was accordingly effected in the name of McAdam, but the defendants who had succeeded to McAdam, with notice of the agreement, afterwards refused to carry it out. Thereupon the plaintiff filed his bill for an accounting and a sale of the land under the direction of the court, with a division of the proceeds in accordance with the terms of the agreement. The defendants resisted the suit, upon the ground that the agreement was within the statute of frauds, and could be established only by an instrument in writing; but the vice-chancellor overruled their objections and upheld the bill. In his opinion (p. 383) he uses the following illustration in support of his conclusion, which is peculiarly appropriate to the present case: " In order to try this question in the most simple manner, I will suppose the case to be the converse of what it is. I will suppose that the land purchased, instead of rising, had fallen in value, that a loss had been sustained, and that Hamilton and McAdam were the plaintiffs seeking to compel Dale to contribute his proportion of the loss. If in this case the authorities would have enabled Hamilton and McAdam, by proving the partnership with Dale, and that the land was part of the partnership stock and effects, to have compelled contribution from Dale, the same authorities will, upon like proof, support the present suit upon the

principle — that of mutuality in remedies — which enables a vendor to recover the purchase-money in this court, though the remedy at law may be equally adequate and more appropriate," and cites several authorities to the effect that in such a case the defendant would have been liable for contribution. The rule laid down in *Dale* v. *Hamilton,* 5 Hare, 369, has since been generally followed, and although there are some decisions to the contrary, may now be said to be the prevailing rule upon that subject.

Irrespective of any decision, however, an agreement of this character cannot be said to contravene the provisions of the statute of frauds. It does not contemplate any transfer of land from one party to the other, or the creation of any interest or estate in lands. In one sense, the parties to such an agreement may be said to have an interest in the lands that are to be purchased under the agreement, — that sense in which the beneficiary, under a trust for the sale of real estate, and payment to to him of the proceeds of the sale, has an interest in the land; but it is only a pecuniary interest resulting from the sale and a right to have the land sold, rather than an interest in the land itself. The statute of frauds does not prevent parol proof for the purpose of showing an interest in lands, but declares that an agreement by which an estate or interest in lands is to be created must be in writing. No interest or estate in the land is created by such an agreement, but by the subsequent acts of the parties under the agreement rights are acquired in reference to the land that may be purchased in pursuance of the agreement, which a court of equity will protect against any attempt to make the statute of frauds an instrument of fraud. A bill for the conveyance of the lands could not be maintained under such an agreement, but by reason of the acts of the parties thereunder an equity would be raised in their behalf which would be superior to the legal title held by him to whom the land was conveyed, and would control that title in subordination to this superior equity.

It is a familiar rule in equity, that lands acquired by a partnership for partnership uses are partnership assets, and are treated in equity as personalty, whether the partnership was formed by oral or written agreement. The same principle should apply when the object of the partnership is to deal in lands, and the assets of the partnership with which the lands are to be purchased are made up of the skill and money which are respectively contributed by the partners as its capital. Upon proof of the existence of such a partnership, the rights and obligations of the respective partners should be determined upon the same principles and with the same results as in other partnerships.

The settlement of partnership accounts, and the conversion into money of the assets of the partnership, whether real or personal, and their division among the partners, has always been one of the functions of a court of equity, and that court never stops to inquire into the source of the title of such assets, or in whose name they are held. The question has frequently arisen in actions for the division of the proceeds after a sale under such an agreement, and it has been invariably held that the statute of frauds is no defense thereto. (*Bruce* v. *Hastings*, 41 Vt. 380; 98 Am. Dec. 592; *Benjamin* v. *Zell*, 100 Pa. 33; *Trowbridge* v. *Wetherbee*, 11 Allen, 361; *Babcock* v. *Read*, 99 N. Y. 609; *Coward* v. *Clanton*, 79 Cal. 23; Reed on Statute of Frauds, sec. 727. See also *Byers* v. *Locke*, 93 Cal. 493.) Under such an agreement, it is invariably held that an action for the division of the profits can be maintained after they have been received, whereas, if the agreement was invalid at the outset, it could not form the basis of such an action. If, however, the agreement was valid at its inception, it is not rendered invalid by the subsequent act of one of the parties, and although it cannot be changed into a different agreement, such as an agreement for the conveyance of the land, yet either party has the right to its enforcement for the purpose of carrying out its original purpose, —the division of the profits resulting from the

speculation. The same principles are applicable in an action to subject land which has become a portion of the assets of such a partnership to a sale under the directions of a court of equity, with a distribution of the proceeds thereof according to the rights of the individual partners. This was the case presented and maintained in *Dale* v. *Hamilton*, 5 Hare, 369. The same procedure was upheld in *Richards* v. *Grinnell*, 63 Iowa, 44; 50 Am. Rep. 727; *Bunnell* v. *Taintor*, 4 Conn. 568; *Hunter* v. *Whitehead*, 42 Mo. 524; *Bissell* v. *Harrington*, 18 Hun, 81; *Holmes* v. *McCray*, 51 Ind. 358; 19 Am. Rep. 735; *Coward* v. *Clanton*, 79 Cal. 23. After the agreement for the purchase and sale has been executed by making the conveyance in accordance with such agreement, it cannot be objected that such conveyance could not have been compelled on account of the statute of frauds. (*Pico* v. *Cuyas*, 47 Cal. 174.) The statute of frauds has no application to an executed agreement.

That the agreement between the parties, which is averred in the complaint, and the evidence given in support thereof, did not contemplate any transfer of the land, or of any interest therein, to the defendants, or either of them, but had for its object only a division of the profits and loss that would remain after its sale, is shown by a consideration of the averments of the complaint hereinbefore presented, and also by the direction of Babcock to the plaintiff while negotiating the agreement to "sell it off as soon as you can, pay up the debts, and divide the profits." It was not necessary for the plaintiff, in support of these averments, to produce written evidence of the agreement, but the agreement could have been established by his oral testimony; and the court erred in striking out the testimony that he gave in support of the agreement. The first question to be determined by the court was, whether there was a partnership, and that fact could be shown by general evidence. In *Forster* v. *Hale*, 5 Ves. 309, where the right to an interest in the leasehold of a colliery, claimed by virtue of a partnership with one of the lessees, was involved, and it was

objected that by permitting parol evidence to establish such interest, an interest in real estate or a declaration of trust would be gained without any writing, in violation of the statute of frauds, Lord Loughborough said: "That is not the question: it is whether there was a partnership; the subject being an agreement for land, the question is, whether there was a resulting trust for that partnership by operation of law. The question of partnership must be tried as a fact, and as if there was an issue upon it. If by facts and circumstances it is established as a fact that these persons were partners in the colliery, in which land was necessary to carry on the trade, the lease goes as an incident. The partnership being established by evidence upon which a partnership may be found, the premises necessary for the purposes of that partnership are by operation of law held for the purposes of that partnership." Under the same principles, if in the present case the court should find, upon sufficient evidence, that a partnership existed between the parties, the fact that they would have an interest in the land which forms a portion of the assets of the partnership would result by operation of law as an incident to such partnership, but this result would not constitute a reason for excluding parol testimony to establish the existence of the partnership.

For the error of the court in striking out the evidence of the plaintiff, the order and judgment are reversed, and the court is directed to grant a new trial.

PATERSON, J., SHARPSTEIN, J., DE HAVEN, J., GAROUTTE, J., and McFARLAND, J., concurred.

BEATTY, C. J., dissenting. — I dissent. The complaint, in my opinion, shows no cause of action, and the evidence offered and stricken out by the court was of a parol contract, invalid under the statute of frauds.