Filed 6/10/14  Curtin v. Keenan CA4/1
Received for posting 7/11/14

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THOMAS L. CURTIN, | D064135 |
| Plaintiff, Cross-defendant and Respondent, | |
| BETTY M. RULE, as Administrator, etc., | (Super. Ct. No. 37-2010-00060162-CU-BC-NC) |
| Plaintiff and Respondent, | |
| v. | |
| JAMES W. KEENAN et al., | |
| Defendants, Cross-complainants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County,

Timothy M. Casserly, Judge.  Reversed with directions.

McKenna, Long & Aldridge, Charles A. Bird and Aaron T. Winn for Defendants,

Cross-complainants and Appellants.

Testa & Associates, James A. Testa and Deborah A. Ries for Plaintiff, Cross-

defendant and Respondent Thomas L. Curtin.

Douglas L. Applegate and Dean E. Daggett for Plaintiff and Respondent Betty Rule.

Plaintiff, cross-defendant and respondent Dr. Thomas L. Curtin (Curtin), and plaintiff and respondent Betty Rule, as administrator of the estate of her deceased son, Paul Rule (Rule or Estate; sometimes together Respondents) brought this action for dissolution of a verbal partnership agreement and for related relief, against defendants, cross-complainants and appellants James Keenan and Judy Keenan (together Keenan). Respondents sought injunctive relief, dissolution of partnership and accounting, on theories of constructive trust, reformation of deed, and quiet title, to enforce the verbal partnership agreement that adjusted their percentage interests in the partnership that operated commercial real property. (Code Civ. Proc., § 761.010 et seq.) The real property, the Loma Alta Industrial Park (the "real property"), is the sole asset of the partnership and is held in the names of the individual partners.

In response, Keenan filed a cross-complaint against Curtin only, to quiet title and obtain declaratory relief and an accounting, regarding the nature and respective percentage ownership portions of the real property, as shown by record title.

Based on the contents of two orders issued in previous partnership-related litigation among the parties, in bankruptcy court (Curtin) and in probate court (Rule), the trial court in the current action granted judgment on the pleadings for both respondents on their second amended complaint (SAC), on the grounds of collateral estoppel. (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511 (*Hernandez*).) On the same rationale, summary judgment was awarded to Curtin on Keenan's cross-complaint, and

2

Keenan's requests for reconsideration or new trial were denied. (Code of Civ. Proc., §§ 437c, subd. (c); 438, subd. (c)(l)(A); 1008.)

Keenan appeals, contending the trial court erred as a matter of law in determining that a 2004 bankruptcy court order in Keenan's then-pending case, *In Re James Keenan*, U.S. Bankruptcy Court, No. 96-00871 B11 (the Keenan bankruptcy), or a final order in the Rule probate·matter, were each entitled to have collateral estoppel effect that would bar Keenan from pursuing any defenses to the SAC, or from prosecuting his own cross-complaint. (*Estate of Rule* (Sept. 14, 2012, D058759) [nonpub. opn.] (our prior opinion).)

Keenan argues that even though the contentious history of the partnership, its verbal arrangements and changes, and its partners' related real property transactions were heavily litigated in both of those related actions, among the various parties and others, triable material issues remain here regarding the title and ownership status of the real property. He argues he is entitled to pursue further litigation of both the SAC and his quiet title cross-action, to attempt to show no ownership of the real property by the partnership, and that instead the deeds showing a tenancy in common should control.

As will be described, this record shows that each of the orders in Keenan's bankruptcy case (affecting Curtin) and in the Rule probate action (sometimes together, the "related rulings") made certain findings about the existence of an oral partnership agreement between Keenan, Curtin and/or Paul Rule, for the management and operation of partnership business upon the real property, and about the percentage ownership interest of each partner in the partnership and its proceeds. However, with respect to the

3

current quiet title theories pursued by the parties, the related rulings did not expressly, impliedly or finally determine the percentage ownership interest of each party in the underlying real property asset that was operated by the partnership.

On de novo review, we determine that all of the essential elements of collateral estoppel (e.g., identity of parties and issues, with finality) cannot now be identified as barring the entirety of the current litigation. (*Vandenburg v. Superior Court* (1999) 21 Cal.4th 815, 828-829 (*Vandenburg*).) Despite many similarities in the issues raised and resolved among the various cases, these collateral estoppel rulings were not justified as a matter of law. We reverse the summary judgment on the cross-complaint and the judgments on the pleadings, with directions to deny the motions and allow for further appropriate proceedings.

I

*BACKGROUND AND ROLES OF PARTIES*

In the 1980's to 1990's, Keenan ran a real estate management company, Data Property Services, and Paul Rule was his longtime employee and friend. Keenan's business employed accountant Ken Cunningham for business and tax purposes. Thomas Perlowski acted as accountant for Curtin. It was not until 1996 that Keenan filed for bankruptcy and a Chapter 11 trustee of his bankruptcy estate was appointed. The bankruptcy litigation included testimony from those parties, and continued until its closure in 2010.

A. Curtin and Keenan Invest in Real Property

Before 1984, Curtin was a partner with other persons in a partnership that owned the subject real property. In 1984, Curtin and Keenan decided to conduct business together. Through an arrangement in which Curtain provided collateral to Keenan, Keenan (and later Paul Rule as an additional partner) bought out all of Curtin's partners in the existing partnership. They executed deeds transferring an 82.014 percent interest in the real property to Keenan and 17.986 percent to Curtin. A subsequent deed transferred a 76.014 percent interest in the real property to Keenan, 6 percent to Paul Rule and 17.986 percent to Curtin, and stated that all those interests were to be held as tenants in common.[1]

Thus, when Keenan and Paul Rule purchased their interests in the real property, they financed the transaction with a note and trust deed back to the sellers (Curtin's previous partners). Curtin already owned his own interest in the real property. The SAC alleges that this financial arrangement was effectively a loan by Curtin of his existing collateral to the other partners to secure the note. This situation became unwieldy from accounting, tax and legal perspectives, and eventually the partners decided to readjust their percentage interests.

---

[1] Under Civil Code section 685, "[a]n interest in common is one owned by several persons, *not in joint ownership or partnership*." (Italics added.) Under Civil Code section 686, "[e]very interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership, for partnership purposes, or unless declared in its creation to be a joint interest, as provided in Section 683, or unless acquired as community property."

5

When Curtin and his wife dissolved their marriage, their 1992 property settlement agreement transferred one-half of his interest in the real property to his ex-wife. Keenan subsequently purchased Curtin's ex-wife's interest. In 1992, record title to the real property reflected that Curtin owned 8.993 percent, Keenan owned 85.007 percent and Paul Rule owned 6 percent of the real property. In 1993, Paul Rule died. Keenan continued to manage all partnership affairs.

According to the SAC, the current parties orally agreed that effective January 1, 1995, they realigned their interests in the partnership as follows: Keenan held 55 percent, Curtin held 37.328 percent and Rule, 7.672 percent. However, they did not record any new trust deeds to reflect any such change in record title to the property. According to the SAC, one of Keenan's bankruptcy declarations and letters from his accountant Cunningham, this arrangement was intended to correct an imbalance in interest expense allocation among the partners, due to the partnership financing arrangement they had made earlier. The SAC seeks an order to implement the partners' oral agreement that they should hold record title to the Loma Alta Property in trust for the partnership, according to their true and revised percentage interests.

In 1995, a former business partner of Keenan in an unrelated matter, Dorothy Satten, obtained a large judgment against him, which was upheld on appeal. As his major creditor, she began vigorous collection efforts.

B. Keenan's Bankruptcy Proceedings

In January 1996, Keenan filed for personal bankruptcy reorganization under Chapter 11. He listed Satten, Curtin and Rule among the many creditors of his

6

bankruptcy estate. For several years beginning in 1996, the bankruptcy trustee (Ross Pyle, represented by attorney Jeffrey Isaacs) litigated several adversary actions he filed to determine the respective interests of various parties in several partnerships that were operating various real properties, including this one, that were managed by Keenan.

The bankruptcy trustee hired an accountant to go over Keenan's 800 to 900 boxes of business documents, which had been seized due to the trustee's concerns about maintaining their integrity.

In the adversary proceedings, Curtin contended he had an oral partnership agreement with Keenan for operation of the subject real property, and he was entitled to a partnership interest in the proceeds from the property that was larger than the recorded title amount, (8.993 percent) and that instead he held the orally arranged amount (37.328 percent). Without taking a position on the merits of the dispute, the trustee for Keenan's bankruptcy estate placed excess cash proceeds from the operation of the real property into a blocked account, representing the difference between those two percentage figures. When the amount became very large over a number of years, the trustee entered into an "interim distribution agreement" (IDA) with Curtin, to allocate a portion of the blocked proceeds for distribution to Curtin, according to his understanding of the shares agreed to in the oral partnership agreement. Notably, the IDA recites that "Curtin's interest in the partnership is established at 37.328% *for purposes of this agreement only*." (Italics added.)

Keenan opposed the implementation of that IDA, and the matter went to a five-day evidentiary hearing before the bankruptcy judge, Peter Bowie. Declarations were filed

7

and testimony was taken from Keenan and Curtin, as well as Keenan's accountant Cunningham and others.

In its related ruling, the bankruptcy court resolved that evidentiary showing by characterizing the issue before it as resolving, at the request of the trustee, the extent of Curtin's interest in the putative partnership, which was disputed by Keenan. First, the court observed that the deeds showed a relatively small interest for Curtin, and that Keenan was contending there was only a tenancy in common in the real property. Accordingly, for Curtin to show entitlement to a larger partnership interest, he would have to make an additional showing of the creation of a valid California general partnership on other, different terms (i.e., a greater percentage interest for Curtin). The court ruled: "Based on the record adduced at the evidentiary hearing, *the Court finds and concludes that for purposes of resolving the present motion* Dr. Curtin has established by a preponderance of the evidence that a general partnership does exist between Mr. Keenan and Dr. Curtin in the operation of the [general partnership and] Loma Alta Industrial Park. [¶] Even if Dr. Curtin had failed to establish a general partnership with Mr. Keenan, the next question would be whether Mr. Keenan should be permitted to deny the partnership's existence at this late date after consistently asserting that it does exist." (Italics added.)

The court stated that the record in its proceedings was "replete" with Keenan's assertions that a partnership with Curtin had been established, and they were enforceable, so that Keenan should not be able to argue the real property that was being operated did not become part of his bankruptcy estate. Keenan's assertions amounted to judicial

8

admissions of the fact that there was a general partnership and that Curtin was a partner. "It also appears that judicial estoppel may apply in these circumstances. [Citations.] Mr. Keenan has consistently asserted for years that Loma Alta is a partnership and that Dr. Curtin is one of the partners. He kept his major creditor at bay for some years by those assertions, and has fomented expensive and lengthy litigation by the estate over those assertions. His current position that Dr. Curtin is not a partner in Loma Alta is clearly contrary to Mr. Keenan's earlier sworn statements, as well as other statements. His assertions over the years the bankruptcy case has been pending have consistently risked inconsistent results. And, it is clear that allowing Mr. Keenan to so diametrically oppose his earlier position is unfair to Dr. Curtin, and to the trustee, both of whom have proceeded in reliance on Mr. Keenan's prior statements."

In its related ruling, the bankruptcy court concluded that Keenan had transferred a portion of his community partnership interest to Curtin, quite apart from any real property transfer or change in the deeds, which never occurred. There was persuasive evidence in the record from Keenan's accountant, Cunningham, showing the terms of the realignment of the partnership interest, effective January 1, 1995. Accordingly, the court ruled that Curtin's interest in that general partnership was 37.328 percent. The order released the designated percentage of proceeds from the operation of the real property from the blocked account, according to the terms of the IDA. The court concluded that *for purposes of the present motion for interim distribution, both Curtin and the trustee had preserved their respective rights and positions*, and a sound business purpose for the payment had been established.

9

Keenan appealed the related ruling to the district court but was unsuccessful. In 2010, the Keenan bankruptcy was closed and the adversary actions were dismissed. Due to other pending litigation, the subject real property was placed in a state court receivership.

### C. Creation of Rule Estate; Keenan as Administrator

After Paul Rule died in 1993, his family agreed that Keenan should be appointed as the independent administrator for the Rule Estate. Keenan was eventually removed as such by the probate court. In May 2005, Keenan filed an amended final account and petition for settlement and allowance of fees. (Prob. Code, §§ 10952, 1061, subd. (a)(1).) Objections were filed by the Estate's successor administrator. The matter went to a bench trial in 2008 on limited issues, as identified by the parties in their joint trial statement, on whether Keenan had breached his fiduciary duties to the Estate. Ultimately, the probate court's September 16, 2010 order (the related ruling) surcharged Keenan over $1.9 million for his breaches of care and fiduciary duty that took place while he was acting as administrator. The court found that Paul Rule was not indebted to Keenan for the acquisition of the subject real property, among others, and that Keenan's amended account should be disapproved with respect to its treatment of the percentage ownership interests of the Rule Estate in real property.

In this related ruling, which resolved the fiduciary duty issues, the probate court set forth its resolution of the disputed ownership interests with respect to the properties as identified in the estate inventory and appraisements. Specifically regarding this real

property, the court determined that Rule held a 7.672 percent interest, as tenant in common with Keenan et al.

Keenan appealed the related probate ruling imposing the surcharges and partially approving the amended account. In our prior opinion, we affirmed, concluding that the record strongly supported the orders surcharging Keenan and accepting, with restrictions that corrected the percentage interests, his amended account: "Substantial evidence supports the court's determinations that as the Rule Estate administrator, Keenan breached his fiduciary duties, did not act with due care, and caused losses to that Estate for which he should be surcharged."

In the current appeal, we granted Rule's request for judicial notice of the filed opinion in that matter, but denied a related request for judicial notice of certain documents from that appellate record. (Evid. Code, § 452, subd. (d).)

### D. Filing of Current Action

The current action was filed in September 2010, and Keenan responded with his quiet title cross-complaint. After Rule was added as a plaintiff and the pleadings were amended, Curtin brought a motion for summary judgment on all allegations of Keenan's cross-complaint. Curtin provided judicially noticeable materials regarding the related bankruptcy court ruling in support of his affirmative defense of collateral estoppel, as barring Keenan from relitigating Curtin's percentage ownership interest in the partnership, as well as his ownership in the real property. Keenan filed opposition. The court granted Curtin's motion for summary judgment.

11

Later, at the argument on Keenan's motions for reconsideration and a new trial, Curtin's counsel characterized the title documents as showing the legal interests in the property, but contended the related ruling had established the existence of the partnership's equitable or beneficial interest in the property, in a greater amount, according to the intent of the parties. Keenan's motions were denied.

Curtin and Rule filed joint motions for judgment on the pleadings on the SAC, for their remaining theories of constructive trust, reformation of deed, quiet title, injunctive relief, and dissolution of partnership and related accounting and liquidation of assets. They asserted their claims were meritorious as matters of law, because Keenan should be collaterally estopped from relitigating the issues related to the existence of the partnership, or its ownership of the real property as agreed in 1994-1995, or the agreed-upon percentage interests of the partners. Keenan filed opposition. At the argument on the motion, counsel for Curtin argued that his right to the property depends upon the existence of the partnership, and the partners had intended that title should be conformed to the interests in the partnership, so that it would be unjust for Keenan to be able to retain the greater percentage of recorded title.

On collateral estoppel grounds, the court granted the motions for judgment on the pleadings on each theory of the SAC, to be specifically enforced upon application to the court. Keenan appeals the judgment in all aspects, including its disposition of his cross-complaint.

12

*APPLICABLE LEGAL PRINCIPLES*

The parties agree that the applicability of collateral estoppel principles to this established record presents issues of law reviewed de novo.  (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 (*Lucido*); *Smith v. ExxonMobil* (2007) 153 Cal.App.4th 1407, 1414-1415.)  Collateral estoppel is often referred to as "issue preclusion."  (*Roos v. Red* (2005) 130 Cal.App.4th 870, 879.)  It is to be distinguished from the other aspect of the concept of res judicata, claims preclusion.  (*Lucido*, *supra* at p. 341, fn. 3.)

"Collateral estoppel applies when (1) the party against whom the plea is raised was a party or was in privity with a party in the prior adjudication, (2) there was a final judgment on the merits in the prior action and (3) the issue necessarily decided in the prior adjudication is identical to the one that is sought to be relitigated."  (*Roos v. Red, supra,* 130 Cal.App.4th 870, 879.)  The latter criteria, identity of issues, also requires that "the issue must have been actually litigated in the former proceeding," as well as necessarily decided there.  (*Hernandez, supra*, 46 Cal.4th 501, 511; *Vandenburg, supra,* 21 Cal.4th at pp. 828-829.)

"The party asserting collateral estoppel bears the burden of establishing these requirements."  (*Lucido, supra*, 51 Cal.3d 335, 341.)  A high degree of certainty is required that the same question was litigated and determined between the same parties in the previous action.  (*People v. Garcia* (2006) 39 Cal.4th 1070, 1092 [conc. & dis. opn., J. Chin].)  "[I]t is not enough that the proposed evidence tends to show that the precise question may have been involved in such litigation."  (*Ibid.*)  Argument or inference do

13

not suffice.  " ' "If upon the face of a record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered in evidence."  [Citation.]' "  (*Ibid*.)

"For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding.  [Citation.]  In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts.  [Citations.] 'The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.' "  (*Hernandez, supra*, 46 Cal.4th 501, 511-512; *Lucido, supra,* 51 Cal.3d at p. 342.)

"[T]he public policies underlying collateral estoppels--preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation--strongly influence whether its application in a particular circumstance would be fair to the parties and constitute sound judicial policy." (*Lucido*, *supra*, 51 Cal.3d at p. 343.)

As a threshold matter, it is clear that Curtin and Rule, under the portion of the collateral estoppel test requiring party identity or privity with a party, could properly assert against Keenan the findings in the related rulings.  The more difficult questions arise from the requirement of identity of issues.

14

III

*CURTIN:  IDENTITY OF ISSUES REQUIREMENT NOT MET*

A.  Scope of Bankruptcy Court Order

Essentially the same collateral estoppel questions are presented with regard to the effect of the related bankruptcy ruling upon Curtin's rights as asserted in his SAC, and as to Keenan's asserted defenses to the SAC, and also as to his cross-complaint.  Our task is to determine whether "identical factual allegations" are placed in issue in the current pleadings, as opposed to those resolved by the related ruling.  (*Hernandez, supra*, 46 Cal.4th at pp. 511-512.)

In the trustee's declaration filed at the time of the IDA motion, he stated:  "Since the commencement of the Partnership Adversary Proceeding . . . the Trustee has not found or been presented with evidence inconsistent with the contention that Curtin's interest in the Partnership and the Property is 37.3280%."[2]  The bankruptcy court considered other evidence as well, and its order expressly circumscribed the issues before it in several ways.  The court said it was adjudicating the extent of Curtin's interest in the "putative" partnership, "for purposes of resolving the present motion," in which the trustee sought to enforce the IDA for release of some proceeds, measured by the amount of Curtin's claimed interest in the oral partnership agreement.  Next, the court noted that there had been no change in the real property deeds, so Curtin would have to prove other aspects of the partnership agreement had been addressed.  Further, the court found that

[2]    This trustee's declaration also discussed an issue not involved here under Title 11 United States Code section 547, dealing with avoidable preferences in bankruptcy.

15

Curtin had shown that Keenan had effectively transferred a portion of his community *partnership* interest to Curtin, which was distinct from any *real property* transfers.

Based on that evidence, the bankruptcy court concluded that a valid California general partnership had been created and that Curtin's interest in it was 37.328 percent. Its related ruling found only that *for purposes of the present motion for interim distribution*, both Curtin and the trustee had preserved their respective rights and positions, and a sound business purpose for the payment had been established.

In the rulings currently on appeal, the trial court found that the related bankruptcy court ruling had collateral estoppel effect with regard to Curtin's ownership of not only a 37.328 percent interest in the orally created partnership, but also his ownership of that percentage of the real property utilized by the partnership.

### B.  Contentions on Current Pleadings

Keenan draws a distinction between the ownership interests of the partners in the partnership business (operating the property), as opposed to the record title ownership of the partners of the subject real property.  In his view, triable issues remain in support of his contention that Curtin is entitled to no more than his 8.993 percent record title ownership in the subject real property, as a tenant in common with the other named titleholders.  Keenan points out that a tenancy in common interest in property is statutorily different from a partnership's holding of property as an owner.  (Civ. Code, §§ 685, 686.)

The Civil Code defines ownership by tenancy in common as inconsistent with ownership by a partnership.  "A tenancy in common, which is a cotenancy without the

16

right of survivorship, exists where several persons own property not as joint tenants or partners. [Citation.] An interest created in favor of several persons is presumed to be a tenancy in common, unless it was acquired in partnership for partnership purposes or as community property, or expressly declared to be in joint tenancy." (12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 39, p. 90; italics omitted.)

Keenan cites to the Uniform Partnership Act of 1994, Corporations Code section 16204, subdivision (d), stating, "Property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes." Here, the deeds are silent on that transfer issue.

In response to such arguments, Curtin asserts that under the verbal partnership agreement, Keenan cannot rely on the deeds as written, because the SAC pleads that a constructive trust and reformation of the deeds is required, and quieting title, to accurately reflect the terms of the parties' verbal partnership agreement, under a mutual mistake theory in failing to vest title in the partnership or the partners specifically on behalf of the partnership. Curtin thus claims that by operation of law, the property held by any of the partners is held in trust for the partnership. He mainly relies on *Swarthout v. Gentry* (1943) 62 Cal.App.2d 68, 78 (*Swarthout*), in which the court stated: "It is well settled in California that a partnership may be formed by parol even though its sole purpose is to deal in real estate. If a partnership is formed and real property is dedicated to partnership use and is used by the partnership for its sole benefit, the fact that title was

17

acquired by one or more of the partners with their private funds or was owned by them as tenants in common prior to the formation of the partnership will not necessarily defeat the claim of the partnership to ownership of the property in the absence of an express agreement that it should remain property of those in whose names title stood. Under such circumstances the owners of the legal title hold the property in trust for the partnership." (See also 48 Cal.Jur.3d (2012) Partnership, § 64, p. 519 ["A partner who, in purchasing real property for the firm, takes title in that partner's own name acts as agent and trustee for the other partners, who are beneficiaries of the trust. The trust is a constructive and not a resulting trust."].)

In *Swarthout*, *supra*, 62 Cal.App.2d 68, the court further noted, "Nor does the statute of frauds prevent proof of the existence of a trust in favor of the partnership where title stands in the names of the partners or in that of a third person. In *Bates v. Babcock* (1892) 95 Cal. 479, it was held that under such circumstances the statute of frauds could not be invoked to commit a fraud on the partnership by depriving it of property belonging to it." (*Swarthout, supra*, at p. 79.)

In *Bates v. Babcock, supra,* 95 Cal. 479, a partnership agreement provided for operation of a business on property, and the evidence showed the land was necessary to carry on the business. The court concluded that property rights in the land were an incident to the agreement: "The partnership being established by evidence upon which a partnership may be found, the premises necessary for the purposes of that partnership are by operation of law held for the purposes of that partnership." (*Id.* at p. 489.) The partnership could assert a resulting trust in its favor, by operation of law, upon ownership

18

of the land. Parol evidence could be presented to prove that the partnership agreement to operate the business concerned the land, in a manner that allowed the partnership to assert an interest in the land (a portion of the assets of the partnership), by operation of law, as an incident to such partnership. (*Ibid.*)

### C. Rules Regarding Partnership Property; Effect of Judicial Admissions

A partnership may exist without owning any assets. "It is not necessary, to constitute a partnership, that there be property jointly owned by the partners forming its capital. The partners may, where so agreed, contribute only the use of property owned by them separately or as tenants in common." (48 Cal.Jur.3d, *supra,* Partnership § 35, pp. 473-474, fn. omitted.)

However, when a partnership acts to acquire real property, the land is property of the partnership and not of the partners individually. (Corp. Code, § 16203; 9 Witkin, Summary of Cal. Law, *supra,* Partnership, § 27, p. 602.) A partner uses or possesses partnership property only on behalf of the partnership. (*Ibid.*; Corp. Code, § 16401, subd. (g).)

"Although property is purchased by partners in their individual names and with their individual funds, the conduct of the parties may show that the property was purchased and used for the partnership as partnership property and that the contribution that each partner made to the funds used to acquire the property was a subscription of additional capital to the partnership." (48 Cal.Jur.3d, *supra,* Partnership, § 44, p. 488, fn. omitted, citing *Swarthout, supra*, 62 Cal.App.2d 68.)

For purposes of determining whether the related rulings should have collateral estoppel effect to bar further litigation on the issues of ownership of property, by the partnership or the partners individually, we also consider the parties' arguments about judicial admissions in pleadings or declarations. Collateral estoppel presents issues of law, not issues of proof. A judicial admission "is a conclusive concession of the truth of a matter and has the effect of removing it from the issues. Nor is a judicial admission treated procedurally as evidence; the particular pleading or allegation is not formally offered in evidence but may nevertheless be relied upon and treated in argument as part of the case." (1 Witkin, Cal. Evidence (5th ed. 2012) Hearsay, § 98, p. 922.) For example, "[a] pleading in a prior civil proceeding may be offered as an evidentiary admission against the pleader in a subsequent proceeding." (*Id*. at § 99, p. 923; *Heater v. Southwood Psychiatric Center* (1996) 42 Cal.App.4th 1068, 1079-1080, fn. 10.)

The related doctrine of judicial estoppel is also to be distinguished from the doctrine of collateral estoppel, which has different elements. The requirements for a judicial estoppel ruling have been summarized as follows: "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [applying federal doctrine to California law].)

20

In the bankruptcy court's ruling, it noted that Keenan's declarations in connection with the trustee's 1996 motion for turnover of properties appeared to admit that a partnership owned and operated the real property, and that the partners' percentage interests in it were 55 percent for Keenan, 37.328 percent as to Curtin and 7.672 percent as to Paul Rule or his estate. There were other such apparent ownership concessions in Keenan's schedule filings in February 1996 (reflecting his 55 percent general partnership interest in the real property). In Keenan's 1999 amendment to his property schedules, he again listed the real property as owned by the partnership, in which he held an 83.335 percent general partnership interest. (As noted by the bankruptcy court in its ruling, the latter figure apparently accounted for the smaller interests that Keenan was conceding that Paul Rule and Curtin owned in the partnership that operated the property.)

In response, Keenan's appellate briefs cite to a recently obtained deposition transcript from Curtin, in which Curtin expressed some uncertainty as to which conversations with Keenan or with Keenan's accountant, Cunningham, had given rise to the amendment of the partnership agreement that Curtin claimed had increased his percentage interest in it. Keenan contends this testimony completely undermines the validity of the collateral estoppel finding.

Generally, the existence of a partnership is a question of fact. (*People v. Park* (1978) 87 Cal.App.3d 550, 564; *Bank of California v. Connolly* (1973) 36 Cal.App.3d 350, 364; 9 Witkin, Summary of Cal. Law, *supra,* Partnership, § 22, pp. 597-598.) It is not surprising that over the many years in which the partnership was operating, and during litigation, there were many dealings and differences among the parties, and it is

21

not persuasive in this context to point to one statement as a "smoking gun" in this instance.

The merits of the SAC or the cross-complaint are not now before us. We cannot currently give conclusive effect to the various judicial admissions identified by the bankruptcy court as having been made by Keenan, about creation or modification of the partnership and the effect of the various parties' contributions to it. Collateral estoppel rules include other considerations about the required identity of issues litigated and actually resolved. We express no opinion on the binding nature of any such judicial admissions previously made by Keenan or others.

## D. Analysis

"The party asserting collateral estoppel bears the burden of establishing these requirements," to a high degree of certainty, to show that the same question was litigated and actually determined between the same parties in the previous action. (*Lucido, supra*, 51 Cal.3d 335, 341; *People v. Garcia*, *supra*, 39 Cal.4th 1070, 1092 [conc. & dis. opn., J. Chin].) "For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding." (*Hernandez, supra,* 46 Cal.4th at p. 511.)

On the current record, under the rules outlined above, it is clear that the bankruptcy court refrained from ruling on the nature of the real property ownership or partnership ownership issues, as they were unnecessary for resolving the IDA issues. Instead, the bankruptcy related ruling was limited to disposing of the oral partnership issues only for purposes of an interim distribution, as between Curtin and the bankruptcy

22

trustee, and only as to one partnership asset, the monetary proceeds from the operation of the real property. The bankruptcy court relied on Keenan's judicial admissions as supporting its finding an oral general partnership agreement existed as to Curtin, in the stated percentages, but only for purposes of making the interim distribution. The current pleadings contradict each other on the status of the real property ownership issues, and the prior related ruling should not be interpreted to preclude resolution on the merits of those ownership issues.

For example, the verbal partnership agreement that became effective in 1995 was modifying the original partnership arrangement which began in 1984. The SAC alleges Curtin had effectively lent his collateral to the other partners to secure their note. The effects of that "loan" transaction, and of the respective contributions to the partnership operations over time, remain unclear as to the proper allocation of all ownership interests in the real property partnership asset. In some cases, the conduct of the parties may show that "property was purchased and used for the partnership as partnership property," even where the property was "purchased by partners in their individual names and with their individual funds." (48 Cal.Jur.3d, *supra,* Partnership, § 44, p. 488, citing *Swarthout, supra*, 62 Cal.App.2d 68.)

Under this complicated set of circumstances, we cannot find that the related ruling has established, solely by operation of law, that the real property held by the partners individually is held in trust for the partnership, so that pursuant to the SAC, the deeds must be reformed, or a constructive trust imposed, or title quieted, as Curtin requests. (See *Swarthout*, *supra*, 62 Cal.App.2d 68.) Rather, the narrow issue identified and

23

resolved by the bankruptcy court did not arise out of the " 'identical factual allegations' " made in the current pleadings. (*Hernandez, supra*, 46 Cal.4th 501, 511-512; *Lucido, supra*, 51 Cal.3d at p. 342.) Moreover, any implied findings made by the bankruptcy court are not certain enough to be given collateral estoppel effect to resolve disputes about partnership assets that go beyond the IDA issues addressed in bankruptcy court. (*People v. Garcia, supra*, 39 Cal.4th at p. 1092 [conc. & dis. opn., J. Chin].)

It makes no difference that Keenan unsuccessfully appealed the bankruptcy court order to the federal district court, or that the adversary action involving Curtin was eventually dismissed when Keenan's bankruptcy case was closed in 2010.[3] We need not discuss any collateral estoppel issues regarding finality of this bankruptcy court related ruling, since only a narrow scope of issues was resolved in it, within the much larger topic of identifying and allocating the partnership's assets. (*Lucido*, *supra*, 51 Cal.3d 335, 341.)

IV

*ESTATE OF RULE: NO IDENTITY OF ISSUES*

A. Scope of Probate Court Ruling

Keenan first argues that Rule's joinder in Curtin's appellate brief does not help Rule to support the validity of the trial court's collateral estoppel finding, because the issues that were previously before the bankruptcy court (regarding Curtin) were different

---

3  It is unnecessary to address Keenan's contentions that he was unable to prepare adequate opposition to the IDA motion, in light of the trustee's seizure of his business documents during the bankruptcy matter.

from those in the related Rule ruling. Keenan next contends the probate court was neither asked nor required to adjudicate ownership to the underlying real property. He then contradicts himself by citing to the probate court's finding as conclusively establishing that the real property was held by all partners as tenants in common.

A fair reading of the probate court's related ruling leads us to conclude that its express and implied findings were necessarily confined to the major issues identified during the 2008 trial, on the successor administrator's objections to Keenan's amended account. The parties' joint trial statement limited those issues to whether (a) Keenan breached his fiduciary duty and should be surcharged, based on the stipulated judgment against the Estate entered in favor of his own bankruptcy estate; and/or (b) Keenan had breached his duties in regard to the bankruptcy trustee's disallowance of a balance due on a note that Keenan owed to the Estate (i.e., whether Keenan acted to protect Rule's interests by opposing such a debt forgiveness in his own favor).[4] Numerous witnesses testified and numerous exhibits were received in evidence. Our prior opinion affirming that ruling was confined to that record.

## B. Comparison of Probate Court Order to SAC

The probate court proceeding was not a vehicle for litigating quiet title issues between Keenan and the Estate. Rather, the probate court accepted the documentation presented to it in the inventory and appraisement, and at that time, the information given the court was that the Estate had certain real property interests, as they were reflected in

---

[4]    In the probate matter, there was also a tax return and liability issue, but it was not pursued on appeal.

25

the deeds. The probate court did not have any oral partnership issues before it, nor did it resolve any civil claims. Instead, our prior opinion took note that there were ongoing quiet title proceedings elsewhere concerning the same real property (these proceedings), but they did not affect the probate issues presented to us in that appeal.

The related ruling in probate court established only that Keenan had committed various breaches of his fiduciary duties to the Estate, in their business dealings. For collateral estoppel purposes in this appeal, Rule has not demonstrated that his SAC theories, that the tenancy in common deeds do not reflect the true intent of the partners and a constructive trust and reformation of deeds should be ordered, were actually brought before the probate court or resolved, as part of the Estate's claims against Keenan's administration of it. (*Hernandez*, *supra*, 46 Cal.4th at pp. 511-512.)

In conclusion, there are not enough "identical factual allegations" at stake in Rule's SAC, regarding any partnership ownership interests in the real property, to justify any conclusion that any such partnership ownership interests were already actually litigated and resolved. (*Lucido, supra,* 51 Cal.3d at p. 342.) Our analysis is confined to the collateral estoppel doctrine and we can express no opinion on the merits of the issues of the respective ownership claims under any express or implied agreements, judicial estoppel or admissions, or constructive trust principles.

## DISPOSITION

The judgment is reversed and the trial court is directed to enter different orders denying the motion for summary judgment on the cross-complaint, and denying the

26

motion for judgment on the pleadings on the SAC, and to allow further proceedings on the merits.  Each party shall bear its own costs on appeal.


                                                    HUFFMAN, Acting P. J.

WE CONCUR:


          HALLER, J.


          McDONALD, J.

27